**Warren S. GRIFFIN, Plaintiff-Appellee,**

v.

**CONTINENTAL AMERICAN LIFE INSURANCE COMPANY, Defendant-Appellant.**

No. 82–8221.

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1984.

Steven Schaikewitz, Atlanta, Ga., for defendant-appellant.

Alexander W. Suto, Kevin C. Greene, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Warren S. Griffin, the plaintiff, filed this diversity action in the Northern District of Georgia seeking to enforce his perfected security interest in all insurance commissions owed to Norman Greenberg, an employee of defendant Continental American Life Insurance Company. The defendant insurance company answered that Greenberg also owed it money, and that its contractual right of set-off had priority over Griffin's perfected security interest in the commissions. The district court granted summary judgment in favor of Griffin, concluding that under Georgia law a perfected security interest would defeat a contractual right of set-off, and this appeal followed. There are no material facts in dispute. Because this question had never been clearly answered by a Georgia court, we certified the following issues to the Supreme Court of Georgia pursuant to Rule 36 of that court, Official Code of Ga.Ann. § 15–2–9 (Michie 1982), Ga.Code Ann. § 24–4536 (Harrison 1981):

1. Under Georgia law does Article Nine (Secured Transactions) of the Uniform Commercial Code apply to contractual rights of set-off?

2. If Article Nine applies to contractual rights of set-off, does the contractual right of set-off have priority over a perfected security interest in the same fund?

3. If Article Nine does not apply to contractual rights of set-off, does a contractual right of set-off have priority over a perfected security interest in the same fund?

4. Under Georgia law, is a security interest in a future account subject to a contractual right of set-off which is contained in the same document creating the account to which the security interest becomes attached?

In *Continental American Life Insurance Company v. Griffin,* 251 Ga. 412, 306 S.E.2d 285 (1983) (attached hereto as an appendix), the Georgia Supreme Court answered the first question affirmatively and the second question negatively, thereby avoiding any need to address the other questions. In other words, the Georgia Supreme Court reached the same conclusion as the district judge below. Therefore, the decision to grant summary judgment in favor of Griffin is

AFFIRMED.

## APPENDIX

In the Supreme Court of Georgia

Decided: Sept. 8, 1983

39834. CONTINENTAL AMERICAN LIFE INSURANCE CO. v. GRIFFIN

GREGORY, Justice.

Plaintiff-appellee, Warren S. Griffin ("Griffin") brought this diversity action in the United States District Court for the Northern District of Georgia against defendant-appellant, Continental American Life Insurance Company ("Continental"). Griffin sought to enforce his perfected security interest in fifty per cent (50%) of all insurance commissions payable to Norman Greenberg ("Greenberg"), an employee of Continental. Continental answered alleging it was entitled to a set-off against any and all sums which may be payable to Greenberg pursuant to his employment contract. The case was decided on cross-motions for summary judgment in favor of Griffin. Continental appealed to the United States Court of Appeals for the Eleventh Circuit which certified questions of state

law for our resolution. (Rule 36 of the Supreme Court of Georgia. See, OCGA § 15-2-9; Code Ann. § 24-4536). The questions and our responses are:

1. Under Georgia law does Article Nine (Secured Transactions) of the Uniform Commercial Code apply to contractual rights of set-off? Yes.

2. If Article Nine applies to contractual rights of set-off, does the contractual right of set-off have priority over a perfected security interest in the same fund? No.

Two other certified questions need not be answered in view of our responses to these questions.

In 1971, Greenberg was indebted to the First National Bank of Atlanta in the amount of $100,000 pursuant to a promissory note on which Griffin acted as indemnitor. On September 20, 1977, Greenberg's debts were discharged in bankruptcy. Griffin was called upon to satisfy the $100,000 indebtedness.

At the time, Greenberg was employed by National Life of Vermont as an insurance agent. To compensate for Griffin's payment of the First National Bank debt, and other debts, Greenberg agreed to indemnify and hold harmless Griffin for any payments made by Griffin on behalf of Greenberg. In connection with the indemnification, on May 17, 1976, Greenberg and Griffin executed a written agreement whereby Greenberg granted Griffin a security interest in 50% of all new or renewal commissions to which Greenberg would be entitled so long as his debt to Griffin remained unsatisfied.

After entering into the indemnification agreement with Griffin, Greenberg commenced employment with Continental. In connection with this employment, Greenberg signed an agreement allowing Continental to retain amounts owed Continental by Greenberg from commissions due him from Continental.

Griffin subsequently perfected his security interest in commissions due Greenberg from Continental by filing a financing statement. Continental has never filed a financing statement with regard to its in-

terest in commissions due Greenberg. Griffin attempted to obtain immediate possession of Greenberg's commissions by obtaining a writ of possession in a state court legal proceeding. Continental refused to pay Greenberg's commissions over to Griffin. Continental alleged that during his employment with Continental, Greenberg became indebted to it in an amount exceeding the amount of commissions owed. Griffin then filed the present action.

In determining whether Article Nine, the Uniform Commercial Code's chapter on secured transactions, is applicable to the assertion of a right of set-off, we are confronted with statutory language that "This article [chapter] does not apply ... to any right of set-off ..." OCGA § 11–9–104(g). While the language is plain enough, the conclusion that this section removes from operation of the Code any controversy between a set-off and a secured party is not warranted by the narrow purpose this provision was intended to serve. Professor Gilmore, a principal reporter for Article Nine of the Code, gives this explanation for the set-off exclusion:

"This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course, a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan dancing. A bank's right to set-off against a depositor's account is often loosely referred to as a 'banker's lien,' but the 'lien' usage has never led anyone to think that the bank held a security interest in the bank account. Banking groups were, however, concerned lest someone, someday, might think that a bank's right of set-off, because it was called a lien, was a security interest. Hence, the exclusion, which does no harm except to the dignity and self-respect of the draftsmen." Gilmore, Security Interest in Personal Property (1965), at 315–316.

Plainly banks need not comply with the requirement of Article Nine in order to create a right to set-off against their depositors. But given the narrow purpose of the set-off exclusion, we are unwilling to read it as removing commercial transactions or conflicts from the operation of the UCC whenever the *priority* of a set-off is involved. See, *Citizens National Bank v. Mid-States Development Co.,* 177 Ind.App. 548, 380 N.E.2d 1243 (1978); *Associates Discount Corp. v. Fidelity Union Trust Co.,* 111 N.J.Super. 353, 268 A.2d 330 (1970). We believe the Code's priority rules require Griffin's perfected security interest to prevail over Continental's right of set-off.

At the outset we acknowledge there is no specific priority rule that deals directly with the conflict between Griffin's security interest and Continental's set-off rights. Nonetheless, underlying the complex Code priority provisions is the keystone rule of OCGA § 11–9–201:

"Except as otherwise provided by this title a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors ..."

The effect of this section is to give the Article Nine secured party, upon a debtor's default, priority over "anyone, anywhere, anyhow" except as otherwise provided by the remaining Code priority rules. The Priority Rules of Article Nine, 62 Cornell L.Rev. 834, 842 (1977); J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code (1972) at 901. Continental, as a creditor of Greenberg, falls within the ambit of this section. There being nothing else in the Code to resolve the priority conflict between Griffin and Continental, section 11–9–201 is controlling. As a general unsecured creditor, Continental's claim of set-off should be subordinated to the perfected security interest asserted by Griffin.

The secured party should be able to rely on compliance with the Code's requirements for perfection and search of the public recording system as against the unrecorded interest of a party asserting set-off rights. Were this otherwise, a secured party could not rely on recording but would be required

to take additional steps to insure that he was accorded full protection.

Certified questions answered as provided herein.

*All the Justices concur.*