**CREDIT ALLIANCE
CORPORATION, Plaintiff,**

v.

**NATIONAL BANK OF GEORGIA,
N.A., Defendant.**

**Civ. A. No. 87–CV–2065–JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 24, 1989.

Henry D. Fellows, Jr., David W. Cranshaw, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for plaintiff.

Thomas M. Byrne, Richard G. Murphy, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

## ORDER OF COURT

CAMP, District Judge.

The court tried this action without a jury on Wednesday, April 19, 1989. Having considered the testimony of all witnesses and reviewed all documents introduced into evidence at trial, the court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## FINDINGS OF FACT

1. Plaintiff First Interstate Credit Alliance, Inc. ("First Interstate") is a corporation incorporated and organized under the laws of the State of New York having its principal place of business in the State of New York. First Interstate is the successor by merger to Leasing Services Corporation.

2. Defendant First American Bank of Georgia, N.A. ("First American" or "the Bank") is a national banking association with its principal place of business in Fulton County, Georgia. Defendant First American is the successor to National Bank of Georgia.

3. On or about August 28, 1984, Air Atlanta, Inc. ("Air Atlanta") and plaintiff entered into an equipment lease (the "Lease") for a Teknekron automatic call distributor to Air Atlanta. The Teknekron automatic call distributor was a principal component of Air Atlanta's reservation system.

4. Plaintiff agreed to the Lease upon the condition that Air Atlanta provide security for its obligations under the Lease in the form of either a letter of credit or pledge of a certificate of deposit.

5. On October 26, 1984, the Bank issued Certificate of Deposit No. 72838 (the "Certificate of Deposit") in the principal amount of $72,500 to Air Atlanta, Inc. Language on the face of the Certificate of Deposit defines the Bank's setoff rights as follows:

An assignment of this certificate shall be effective only upon reissuance of the certificate by the Bank or upon the Bank's acknowledgment of receipt of notification of a security assignment and its consent thereto. The Bank has the right to setoff against the certificate any obligation owed to the Bank by any one or more of the Payees, whenever said obligation arises and any assignment will be subject thereto.

6. On or about the same date, Air Atlanta and plaintiff entered into a Pledge Agreement pursuant to which Air Atlanta pledged, transferred, and delivered the Certificate of Deposit to plaintiff. Contemporaneously, plaintiff filed a UCC–1 Financing Statement with the Clerk of Fulton County Superior Court.

7. The Pledge Agreement entered into by Air Atlanta and plaintiff contains the following language: "The undersigned hereby warrants that the above-described collateral security (the Certificate of Deposit) is free and clear of all liens and encumbrances and that it has the right to transfer same to you without consent of any other party."

8. First Interstate also wrote a letter ("Letter Agreement") to the Bank dated October 26, 1984, requesting acknowledgment by the Bank of the receipt of notice that the Certificate had been pledged to First Interstate.

9. The third paragraph of this Letter Agreement provides that "You further acknowledged that Leasing Service Corporation can, upon notice to National Bank of Georgia advising you that Air Atlanta, Inc. is in default under its obligations to Leasing Service Corporation, request and receive the proceeds plus any accrued interest for captioned Certificate of Deposit, ..." The purpose of this language was to preserve the Bank's unconditional obligation to pay the proceeds of the Certificate of Deposit to plaintiff in the event of a default by Air Atlanta.

10. Mr. Jeffrey Johnson signed the October 26, 1984, Letter Agreement on behalf of the Bank. Mr. Johnson added general language to the Letter Agreement, noting that the right of First Interstate to recover proceeds of the Certificate was "subject to the rules and regulations governing bank certificates of deposit and applicable law." Mr. Johnson's specific purpose in adding this language was to ensure that the Bank did not waive interest penalties for early withdrawal. However, Mr. Johnson drafted this language broadly to protect any rights the Bank might have under applicable rules and regulations governing banking certificates of deposit. However, the Bank's right of setoff was not a "rule" or "regulation" as contemplated by this provision. The face of the Certificate differentiated between conditions shown on the face of the Certificate of Deposit and rules and regulations of the Bank. The right of setoff was a condition shown on the face of the Certificate.

11. The Letter Agreement between plaintiff and defendant also provides that "Any requests to redeem or negotiate said certificate of deposit must be approved in writing by an officer of Leasing Services Corporation."

12. At the time plaintiff and defendant entered into their Letter Agreement, plaintiff transmitted to defendant a copy of the Pledge Agreement containing Air Atlanta's warranty that the Certificate of Deposit was free and clear of all liens and encum-

brances. Defendant was aware that the purpose of the pledge of the Certificate of Deposit was to secure Air Atlanta's obligations to plaintiff under the lease for the Teknekron automatic call distributor.

13. Upon receipt of the Certificate of Deposit, the executed Pledge Agreement, and the Letter Agreement executed by defendant, plaintiff "funded" the lease by payment to Teknekron Infoswitch Corporation, the supplier of the leased Teknekron automatic call distributor to Air Atlanta.

14. Plaintiff relied on defendant's assurances in the October 26, 1984 Letter Agreement, acknowledging the pledge of the Certificate of Deposit as security in funding the lease.

15. In the Spring of 1987, Air Atlanta defaulted on its obligations to First Interstate and filed a bankruptcy petition. Air Atlanta is currently indebted to plaintiff under the lease for an aggregate amount of $99,157.99, plus attorney's fees and costs provided for under the terms of the lease.

16. Air Atlanta is currently a debtor in a Chapter 11 proceeding pending before the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case No. 87–02530. The Bankruptcy Court has modified the automatic stay of 11 U.S.C. § 362 to permit plaintiff and defendant to exercise any and all rights and remedies which they hold with respect to the Certificate of Deposit.

17. Plaintiff currently has physical possession of the Certificate of Deposit. Plaintiff has offered to tender the Certificate of Deposit to defendant, but defendant has informed plaintiff that it will reject tender of the Certificate of Deposit for payment to plaintiff.

18. The Bank has refused to pay the deposited funds to First Interstate because Air Atlanta also was in default on its indebtedness to the Bank in an amount greater than the amount of the deposited funds. The Bank, however, presented no evidence that it exercised its setoff rights. Nor did the Bank present evidence that any of its present indebtedness was matured or in existence at the time it executed the October 26, 1984, Letter Agreement.

## CONCLUSIONS OF LAW

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(a). Based on the evidence, the court concludes that the plaintiff is entitled to recover the proceeds of the Certificate of Deposit from defendant for the following three reasons.

■ First, the Letter Agreement preserved the Bank's unconditional obligation to pay the proceeds of the Certificate of Deposit, despite the Bank's right of setoff, in the event of default by Air Atlanta. The pertinent portion of the Letter Agreement provides:

> You further acknowledge that Leasing Service Corporation can, upon written notice to National Bank of Georgia advising you that Air Atlanta, Inc. is in default under its obligations to Leasing Service Corporation, request and receive the proceeds plus any accrued interest for captioned Certificate of Deposit, subject to the rules and regulations governing bank certificates of deposit and applicable law.

By acknowledging the Letter Agreement containing the above clause, the Bank agreed to subordinate its setoff rights to the plaintiff's right to receive the proceeds of the Certificate of Deposit upon a default by Air Atlanta.

Mr. Johnson's addition to the last sentence of the Letter Agreement did not alter defendant's unconditional obligation to pay the proceeds of the Certificate of Deposit to plaintiff. Mr. Johnson added the phrase "subject to the rules and regulations governing bank certificates of deposit and applicable law." This language must be read with the provision on the face of the Certificate of Deposit regarding the "Rules of National Bank of Georgia and all applicable laws and regulations...." The Letter Agreement does not subordinate the plaintiff's right to the proceeds to the Bank's right of setoff because the setoff right is not a "rule" or "regulation" as contemplated by Mr. Johnson.

■ Consideration for the Letter Agreement may have existed in the form of the benefits that flowed to the Bank because of the plaintiff's funding of the Lease. However, the court need not consider this argument because the Letter Agreement between plaintiff and defendant is supported by adequate consideration in the form of promissory estoppel. O.C.G.A. § 13–3–44(a) provides: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *Irvin v. Lowe's of Gainesville, Inc.*, 165 Ga.App. 828, 830, 302 S.E.2d 734 (1983).

Reliance to support promissory estoppel exists in the present case. The last two paragraphs of the Letter Agreement evidenced defendant's agreement to subordinate its right of setoff to the right of plaintiff to be paid the proceeds of the Certificate of Deposit in the event of Air Atlanta's default. In reliance upon the Bank's assurances stated in the Letter Agreement, plaintiff acknowledged satisfaction of the remaining conditions to the Lease and funded the Lease by payment to the supplier of the leased Teknekron reservation system. At the time the Letter Agreement was executed, the Bank did not suggest or assert to plaintiff that the Bank intended to preserve its right of setoff. At that time, defendant had actual knowledge of the purpose of the pledged Certificate of Deposit to plaintiff.

■ The second reason that the Bank may not exercise its right of setoff is because the language on the face of the Certificate only confirms the Bank's common law setoff rights. Under Georgia law, the Bank's right to setoff funds in a general account or certificate of deposit applies only to matured debts owed to the Bank at the time of notice of the assignment of the account. *Design Spectrum, Inc. v. First National Bank of Atlanta*, 182 Ga.App. 418, 355 S.E.2d 733 (1988). In the present

case, the Bank does not have a common law right of setoff because it presented no evidence that it held any matured debts against Air Atlanta at the time the Bank received notice of the assignment of the proceeds of the Certificate of Deposit.

The parties, however, may contract to subject unmatured debts to the Bank's right of setoff. *Id.* Under Georgia law, the Bank's right to setoff against unmatured debts must be clearly articulated. *T & B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1377 n. 9 (11th Cir. 1989); *Prudential–Bache Securities, Inc. v. Bartow County Bank*, 187 Ga.App. 530, 531, 370 S.E.2d 751 (1987); *Design Spectrum, Inc.*, 182 Ga.App. at 418, 355 S.E.2d 733; *First National Bank of Gainesville v. Appalachian Industries, Inc.*, 146 Ga. App. 630, 247 S.E.2d 422 (1978). The language on the face of the Certificate of Deposit states: "The Bank has the right to set off against this certificate any obligation owed to the Bank by any one or more of the Payees, whenever said obligation arises and any assignment will be subject thereto." This language, does not create a contractual right to set off unmatured debts because it does not clearly state that the Bank may setoff against unmatured debts. *Id.* This language simply confirms the common law right of setoff.

■ Nor can the Bank exercise its right of setoff because the plaintiff has a perfected security interest in the Certificate of Deposit. Contrary to the representations of counsel, Article Nine of the Uniform Commercial Code applies to resolving priority disputes between Article Nine secured interests and contractual setoff rights, as distinguished from the creation of the right of setoff. *Continental American Life Insurance Co. v. Griffin*, 251 Ga. 412, 306 S.E.2d 285 (1983), *later proceeding, Griffin v. Continental American Life Insurance Co.*, 722 F.2d 671 (11th Cir.1984). The rights of the parties are not affected by the O.C.G.A. § 11–9–104(g) provision excluding from the coverage of Article Nine "any right of setoff." *Id. See First National Bank v. Lone Star Life Insurance Co.*, 524 S.W.2d 525 (Tex.Civ.App.1975); D.

958

Harrison, "Effect of UCC Article 9 Upon Conflict, as to Funds in Debtor's Bank Account, Between Secured Creditor and Bank Claiming Right of Setoff," 3 A.L.R. 4th 998 (1981). The rights of the parties are also not affected by the O.C.G.A. § 11–9–104(j) provision excluding the transfer of an interest in a "deposit account" from the coverage of Article Nine. *Id. See also Spurlock v. Commercial Banking Co.*, 138 Ga. App. 892, 227 S.E.2d 790 (1976), *aff'd*, 238 Ga. 123, 231 S.E.2d 748 (1977). O.C.G.A. § 11–9–105(1)(e) expressly excludes from the definition of a "deposit account" an account represented by a certificate of deposit.

■ The contractual right of setoff does not have priority over a perfected security interest in the same fund. *Continental American*, 251 Ga. at 412, 306 S.E.2d 285, *later proceeding*, 722 F.2d at 671. *See First National Bank v. Lone Star Life Insurance Co.*, 524 S.W.2d 525. Rather, "an Article Nine secured party, upon the debtor's default, [has] priority over 'anyone, anywhere, anyhow' except as otherwise provided by the remaining Code priority rules." *Continental American*, 251 Ga. at 414, 306 S.E.2d 285. A perfected security interest in the Certificate of Deposit takes priority over the Bank's unexercised right of set-off. *Continental American*, 251 Ga. at 412, 306 S.E.2d 285, *later proceeding*, 722 F.2d at 671. *See First National Bank*, 524 S.W.2d at 525.

Therefore, the rights of the parties in the present case must be determined as of the time when the Bank elects to exercise its right of set-off. *See T & B Scottdale Contractors, Inc.*, 866 F.2d at 1377; *Prudential–Bache*, 187 Ga.App. at 532–33, 370 S.E.2d 751; 10 Am.Jur.2d, Banks, § 666. In the present case, the plaintiff perfected its security interest in the Certificate of Deposit by its actual possession of the Certificate of Deposit and by filing a UCC financing statement. *Continental American*, 251 Ga. at 412, 306 S.E.2d 285, *later proceeding*, 722 F.2d at 671. *See First National Bank*, 524 S.W.2d at 525.

The evidence also shows that defendant had actual knowledge that the specific purpose for the assignment of the Certificate of Deposit by Air Atlanta to plaintiff was to secure the performance of the obligations of Air Atlanta under the Lease. The Bank did not exercise its right of set-off prior to the time the plaintiff perfected its security interest in the Certificate of Deposit. Therefore, the Bank's setoff rights are subordinate to the plaintiff's security interest in the Certificate of Deposit. *Id.*

For all of the foregoing reasons, the court concludes that plaintiff is entitled to recover the proceeds of the Certificate of Deposit from defendant. The defendant is liable to plaintiff for the principal amount of the Certificate of Deposit of $72,500.00, plus accrued interest under the terms of the Certificate of Deposit, which states on its face that it is an automatically renewing instrument.

The court having made Finding of Fact and Conclusions of Law, it is hereby ORDERED and ADJUDGED that judgment be entered in favor of plaintiff and against defendant for the principal amount of $72,-500.00, plus interest which has accrued under the Certificate of Deposit in the amount of $9,375.64 as of April 18, 1989, plus interest which is accruing at the daily rate of $19.47 from April 19, 1989 until the entry of Judgment. The Clerk is DIRECTED to enter Judgment accordingly.

SO ORDERED.