**WEST ONE BANK, UTAH,
Plaintiff and Appellee,**

v.

**LIFE INSURANCE COMPANY
OF VIRGINIA, Defendant
and Appellant.**

No. 930476–CA.

Court of Appeals of Utah.

Dec. 21, 1994.

Rehearing Denied Jan. 24, 1995.

---

Russell C. Fericks and Gerald J. Lallatin, Salt Lake City, for appellant.

Carolyn Montgomery and James H. Woodall, Salt Lake City, for appellee.

Before BENCH, BILLINGS and WILKINS, JJ.

## OPINION

BILLINGS, Presiding Judge:

Appellant Life Insurance Company of Virginia (Life of Virginia) appeals from a grant of summary judgment in favor of appellee West One Bank of Utah (West One). On appeal, Life of Virginia claims its right to retain United Underwriters Inc.'s (UUI) commissions is superior to West One's prior perfected security interest in these commissions and thus the trial court erred in granting judgment in favor of West One. We affirm.

## FACTS

Summary judgment is only proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). In reviewing the trial court's grant of summary judgment, this court accepts the facts and inferences in a light most favorable to the losing party and gives no deference to the trial court's conclusions of law. *Litster v. Utah Valley Community College,* 881 P.2d 933, 937 (Utah App.1994).

Life of Virginia entered into an insurance brokerage contract with UUI in 1984. Under this contract, Life of Virginia agreed to pay UUI commissions on any Life of Virginia insurance policies it sold.

In late 1987, West One's predecessor, Continental Bank of Utah, loaned UUI $1,500,-000. To secure payment of this promissory note, on December 22, 1987 UUI executed and delivered to West One a Collateral Pledge Agreement and Assignment of Contracts giving West One a security interest in commissions payable to UUI from various insurance companies, including commissions due UUI under its brokerage contract with Life of Virginia.

Subsequently, West One sent Life of Virginia a written notice of assignment informing it of the assignment of contracts from UUI, but not directing Life of Virginia to make future commission payments directly to West One.

Life of Virginia acknowledged receipt of the notice of assignment on December 30, 1987 and, because it had not been directed otherwise, continued to pay commissions directly to UUI without objection from West One. On March 2, 1988, West One perfected its security interest in the commissions payable to UUI from Life of Virginia.

In March of the following year, Life of Virginia advanced $100,000 to UUI, secured by a promissory note and an assignment to Life of Virginia of all of UUI's right, title and interest in any and all commissions to which UUI was entitled under the parties' brokerage contract. This assignment specified that Life of Virginia would pay UUI commissions in the form of credits against the balance of the loan. In 1989 and 1990, Life of Virginia applied $123,000 in UUI's commissions as they were earned to satisfy UUI's outstanding debt to Life of Virginia.

On June 19, 1992, West One filed a complaint alleging that UUI had defaulted on its Note and Pledge Agreement with West One and that UUI owed West One in excess of $668,000. In its complaint West One asserted that, contrary to West One's prior perfected security agreement, Life of Virginia had wrongfully retained commissions payable to UUI to offset the balance of its subsequent note.

The trial court granted summary judgment in favor of West One and ordered Life of Virginia to pay West One all of the commissions it had retained as payment under its promissory note with UUI. Life of Virginia appeals, claiming West One's security interest in UUI's commissions is inferior to Life of Virginia's right to retain the commissions.[1]

## ANALYSIS

■ In Utah, as well as in the majority of jurisdictions, a secured creditor's perfected security interest in a debtor's proceeds takes priority over any subsequent right of setoff. *See Insley Mfg. Corp. v. Draper Bank & Trust*, 717 P.2d 1341, 1347 (Utah 1986) (holding secured creditor's perfected security interest has "priority over 'anyone, anywhere, anyhow'") (quoting *Continental Am. Life Ins. Co. v. Griffin*, 251 Ga. 412, 306 S.E.2d 285, 287 (1983)); *accord Citizens Nat'l Bank v. Mid–States Dev. Co.*, 177 Ind.App. 548, 380 N.E.2d 1243, 1248 (1978).[2] While conceding that a secured party normally stands before

other creditors under article nine of the Uniform Commercial Code (UCC), including those asserting a subsequent setoff, Life of Virginia contends West One cannot benefit from this rule because Life of Virginia did not exercise a setoff when it retained the commissions due UUI under the brokerage contract. Rather, Life of Virginia argues, UUI simply used its commissions to pay its obligation to Life of Virginia, an unsecured creditor, before West One exercised its rights under section 9–318(3) of the UCC. Life of Virginia acknowledges that, if its retention of UUI commissions is, instead, properly characterized as a setoff, its claim to the commissions fails.

Life of Virginia relies on a view of setoff as it is defined under traditional rules of civil procedure. It maintains that its retention of commissions was not a setoff because the contracts giving rise to the retention arose from the same transaction. *See Mark VII Fin. Consultants Corp. v. Smedley*, 792 P.2d 130 (Utah App.1990). We do not find this argument persuasive. The contracts at issue in the instant matter are separate and do not constitute the same transaction. First, in 1984, Life of Virginia and UUI entered into a brokerage contract wherein Life of Virginia agreed to pay UUI commissions for each Life of Virginia policy that it sold. UUI subsequently assigned its rights to these commissions to West One. Then, in 1989,

---

1. In this appeal, Life of Virginia argues several issues that were not presented to the trial court and that are not supported by the record. First, Life of Virginia claims that West One's failure to establish the date of UUI's default creates a material issue of fact precluding the trial court's grant of summary judgment. We find from the record this claim is raised for the first time on appeal. Accordingly, we decline to address it. *See Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993) (holding failure to raise issue below precludes its consideration on appeal); *accord John Deere Co. v. A & H Equip., Inc.*, 876 P.2d 880, 888 (Utah App.1994).

  Likewise, Life of Virginia did not preserve its waiver and estoppel claims. To preserve a substantive issue for appeal, "a party must timely bring the issue to the attention of the trial court, thus providing the court an opportunity to rule on the issue's merits.... [T]he mere mention of an issue in the pleadings ... is insufficient to raise an issue at trial and thus insufficient to

preserve the issue for appeal." *LeBaron & Assocs. v. Rebel Enters.*, 823 P.2d 479, 482–83 (Utah App.1991). While raised in its answer as an affirmative defense, Life of Virginia's motion on summary judgment is bereft of any reference to waiver and estoppel, and the record is devoid of evidence that Life of Virginia presented these claims orally to the trial court. Thus, we refuse to consider these issues on appeal. *See id.* at 483.

2. *See also In re Apex Oil Co.*, 975 F.2d 1365, 1368 (8th Cir.1992); *First Nat'l Bank & Trust Co. of Oklahoma City v. Iowa Beef Processors, Inc.*, 626 F.2d 764, 769–70 (10th Cir.1980); *Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 881 (Bankr.S.D.N.Y.1991); *Bank of Kansas v. Hutchinson Health Servs., Inc.*, 13 Kan.App.2d 421, 773 P.2d 660, 662 (1989), *aff'd*, 246 Kan. 83, 785 P.2d 1349, 1356 (Kan. 1990); James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 25–2, at 1031 (2d ed. 1980).

the same parties entered into a second contract in which Life of Virginia advanced funds to UUI to be paid in the form of credits against the commissions Life of Virginia owed to UUI. We find that these contracts constitute two distinct transactions.

Furthermore, this case is governed by the Uniform Commercial Code as adopted in Utah, *see* Utah Code Ann. tit. 70A (1990), and concerns the concept of setoff as it relates to priority of creditors under article nine.[3] In several cases factually similar to the case before us, courts have classified parties in Life of Virginia's position as setoff claimants and determined the priority of claims in light of the setoff rules set forth in section 9–318 of the UCC. First, the Utah Supreme Court held in an analogous case "[t]he effect of [the UCC] is to give the Article Nine secured party ... priority over 'anyone, anywhere, anyhow,' except as otherwise provided by the remaining Code priority rules." *Insley Mfg. Corp.*, 717 P.2d at 1347 (quoting *Continental Am. Life Ins. Co.*, 306 S.E.2d at 287). In that case, Insley Manufacturing Corporation (Insley) sold a backhoe to Schneider Machinery Sales (Schneider) and, to secure the debt, obtained a security interest in the backhoe and its proceeds in October 1978. *Id.* at 1342. In November of the same year, Insley properly perfected its security interest. In March 1979, Schneider established a business banking account with Draper Bank & Trust. Sometime in early October 1979, five checks drawn against Schneider's account were presented to the bank for payment. On October 5, the bank determined Schneider had insufficient funds to cover these checks, but paid them in overdraft. On October 9, Schneider sold the backhoe it had purchased from Insley and deposited the proceeds in its business bank account. The bank credited Schneider's account for the full amount of the deposit and then paid itself the money that it had loaned to Schneider on the overdraft. As a result, Schneider could not thereafter pay Insley the money it owed on the backhoe. Insley filed this action, asserting that its security interest in the proceeds was superior to the bank's right of setoff, and that the bank offset its own debt in derogation of Insley's prior perfected security interest. *Id.* at 1343. The Utah Supreme Court agreed and held, after a detailed discussion of article nine's applicability to setoff in this case, "the Code's priority rules require that Insley's interest must prevail over [the bank's] right of setoff." *Id.* at 1347.

Further, in *In re Apex Oil Co.*, 975 F.2d 1365 (8th Cir.1992), the Eighth Circuit Court of Appeals decided another factually similar case under the priority rules of article nine. The controversy in *Apex* arose from a 1979 assignment and security agreement between Artoc Bank and Trust, Limited (Artoc) and Uni Refining, Inc. (Uni). Under the agreement, Uni assigned to Artoc all its present and future accounts receivable and the proceeds thereof to secure a note Artoc had given it. *Id.* at 1366–67. As part of the agreement, Artoc required Uni to place two stamped notices on each of its invoices, stating that Artoc had been granted a security interest in Uni's receivables and directing that payments be made to a lockbox in care of Uni and Allied Bank of Texas. In 1980, Uni sold several products to Apex Oil Company (Apex) and issued invoices bearing the stamped notices. Accordingly, Apex made payments to the lockbox. In December 1980, however, rather than remit payment to the lockbox, Apex offset the amount it owed to Uni against amounts Uni owed to Apex on Apex's own invoices. Shortly thereafter, Uni

---

**3.** UUI assigned to West One "*all and whatever sum or sums of money now due and/or to become due* to the undersigned from Life of Virginia." (Emphasis added.) Further, in its notice of assignment, UUI informed Life of Virginia that UUI "has assigned to [West One Bank], as collateral, ... *all of [UUI's] right, title and interest* in and to that certain Contract by and between [UUI] and Life of Virginia." (Emphasis added.) Consistent with article nine, UUI could make a subsequent assignment to another creditor following its assignment to West One; however, it

could assign only the rights that it retained under the prior assignment. UUI could not make an assignment to Life of Virginia that exceeded its own interests or that interfered with West One's secured right to receive UUI's commissions. "An assignment of an interest in a contract gives the assignee the same rights as the assignor and nothing more." *Jack·B. Parson Companies v. Nield*, 751 P.2d 1131, 1133 (Utah 1988); *see also Wiscombe v. Lockhart Co.*, 608 P.2d 236, 238 (Utah 1980) (stating assignee gains nothing more by assignment than had assignor).

filed a petition for bankruptcy and Artoc filed suit against Apex to recover the sums that Apex used as a setoff. Both the trial court and the Eighth Circuit Court of Appeals applied the notice and priority rules of section 9–318 of the UCC to resolve this controversy. *Id.* at 1367–70.

Finally, in *Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871 (Bankr.S.D.N.Y.1991), the United States District Court for the Southern District of New York again applied the article nine priority rules in another factually analogous case. In *Pioneer*, Presidential Airways, Inc. (Presidential) entered into a financing contract with Pioneer Commercial Funding Corporation (Pioneer), which was secured by a duly perfected assignment of Presidential's accounts receivables. *Id.* at 875. At that time, United Airlines, Inc. (United) was one of Presidential's major account debtors. Prior to entering into the financing arrangement with Pioneer, Presidential had borrowed $3.5 million from United on an unsecured basis. When Presidential later defaulted on its obligation, United offset the amount it owed Presidential as an account debtor and applied it to Presidential's own outstanding debt. Pioneer filed an action against United, alleging tortious interference with a contract, asserting that United knew of Pioneer's assignment and prior perfected security interest when it took the setoff. *Id.* at 876. In ruling on this action, the New York court relied upon section 9–318 of the New York Uniform Commercial Code, *id.* at 881–83, a provision identical to section 9–318 of the Utah Uniform Commercial Code. *Compare* Utah Code Ann. § 70A–9–318 (1990) *with* N.Y.U.C.C. § 9–318 (McKinney 1990).

We therefore conclude that Life of Virginia's retention of the commissions due UUI was indeed a setoff. Because we hold that Life of Virginia exercised a right of setoff, section 9–318(1) of the UCC governs the parties' respective rights to UUI's commissions. This section provides, with our emphasis:

(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 70A–9–206 *the rights of an assignee are subject to*:

(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) *any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.*

Utah Code Ann. § 70A–9–318(1) (1990).

Section 9–318(1) refers to when an account debtor may assert a right of setoff or other claim or defense against a secured party, and provides that a third party creditor may assert a right of setoff if that right accrues *before* the account debtor receives notice of the secured party's perfected claim. *See Apex*, 975 F.2d at 1368. This subsection applies when a secured party sues an account debtor to recover monies it withheld in derogation of the secured party's prior properly noticed and perfected interest.

Our conclusion is supported by the vast majority of courts that have considered this issue. *See, e.g., Apex*, 975 F.2d at 1368 (holding under Texas law section 9–318(1), not section 9–318(3),[4] governs whether setoff by account debtor is proper as against secured party's perfected interest); *Pioneer*, 122 B.R. at 882–83 (stating subsection (1) is key provision of § 9–318 regarding rights of secured party versus rights of setoff); *BarclaysAmerican/Business Credit, Inc. v. E & E Enters., Inc.*, 697 S.W.2d 694, 698 (Tex.Ct. App.1985) (holding subsection (1)(b) governs priority between account debtor's right of setoff and secured party's interest in assignor's receivables); *Chase Manhattan Bank (N.A.) v. New York*, 40 N.Y.2d 590, 388 N.Y.S.2d 896, 898–99, 357 N.E.2d 366, 369 (1976) (finding section 9–318(1) governs account debtor's right of setoff versus claims of

4. In pertinent part, subsection (3) of the U.C.C. provides:

The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee.

U.C.C. § 9–318(3) (1986); Utah Code Ann. § 70A–9–318(3) (1990).

assignee); *Central State Bank v. New York,* 73 Misc.2d 128, 341 N.Y.S.2d 322, 325 (1973) (same).

 Under subsection (1)(b), priority depends on when the account debtor's claim accrued and when the account debtor received notice of the assignee's security interest.[5] Thus, the question before us is whether Life of Virginia received legally sufficient notice of UUI's assignment to West One before it offset the commissions due UUI. Life of Virginia clearly did.[6]

West One gave Life of Virginia written notice of its assignment in December 1987 and perfected its security interest in UUI's commissions on March 2, 1988. Life of Virginia did not advance funds to UUI, and therefore did not have a right of setoff, until a year later, in March 1989. Thus, West One's interest under its security agreement is superior to Life of Virginia's right of setoff. That West One did not give Life of Virginia notice of UUI's default or make a specific demand for payment until June 1992 does not diminish its priority position under its perfected security agreement.[7]

## CONCLUSION

Viewing the facts in a light most favorable to Life of Virginia, we conclude that West One provided Life of Virginia with adequate notice of its prior perfected interest in UUI's commissions. We therefore affirm the trial court's grant of summary judgment in favor of West One.

BENCH and WILKINS, JJ., concur.

**5.** Life of Virginia's claim to UUI's commissions accrued in March 1989, when UUI executed a second assignment in favor of Life of Virginia.

**6.** Initially Life of Virginia argued that because West One gave it neither a notice of UUI's default nor a demand for direct payment, West One lost its rights as a secured party. However, Life of Virginia subsequently conceded that if its retention of UUI's commissions were characterized as a setoff, § 9–318(1) controls and its claim fails. *See Pioneer,* 122 B.R. at 883 (rejecting account debtor's claim that § 9–318(1)(b) requires a secured party to give both a notice and demand, stating "it would be redundant to specifically include both requirements [again] in sub-division 3").

Alternatively, Life of Virginia appears to contend that by the terms of its assignment, West One's rights did not accrue until UUI defaulted, and therefore Life of Virginia's right of setoff accrued prior to West One's perfected claim. Again, we hold that notice of the assignment, not the debtor's default, triggers the secured party's

priority. *See In re Gibson Group, Inc.,* 126 B.R. 759, 761 (Bankr.S.D.Ohio 1991) (finding irrelevant whether account debtor knew of debtor's default and secured party's interest, and holding that outcome of priority battle turns on "priority in time of the security interest. That is, if the security interest ... was perfected before the setoff right ... arose," secured party's interest prevails); *see also Mid–States Sales Co. v. Mountain Empire Dairymen's Ass'n,* 741 P.2d 342, 346 (Colo.Ct.App.1987) (stating secured party's rights not determined by debtor's default, but by creditor's compliance with article nine).

**7.** Section 9–318(1) does not contemplate a two-prong notice of assignment; rather, it merely requires that the secured party give the account debtor notice of its interest under the security agreement. *See Pioneer,* 122 B.R. at 883 ("While a two-pronged notice requirement is mandated by sub-division 3, only notification of the assignment is required under sub-division 1.").