**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 2, 2022**

# In the Court of Appeals of Georgia

A21A1610. MED-CARE SOLUTIONS, LLC et al. v. BEY & ASSOCIATES, LLC.

DOYLE, Presiding Judge.

At issue in this interpleader case is the allocation of excess funds remaining after the settlement of a personal injury action brought by Arron Chandler. Six claimants asserted an interest in the interpleader funds. Following a bench trial, the trial court entered a final order directing disbursement of the excess funds to a hospital and a revocable trust, which trust provided Chandler with cash advances in exchange for a security interest in any funds he received as a result of settlement or judgment on his personal injury claim. Med-Care Solutions, LLC, and Marrick Medical Finance, LLC, which asserted that they had statutory medical liens and

contractual liens under the Georgia Uniform Commercial Code[1] ("the Georgia UCC") against the interpleader funds, appeal the final order. The appellants argue that the trial court erred by finding that they could not enforce their liens under the Georgia UCC. For the reasons that follow, we affirm.

"We begin by noting that the interpretation of a statute is a question of law, which we review de novo on appeal. Moreover, because the trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review."[2]

The evidence in this case is undisputed. Bey & Associates, which represented Chandler in a personal injury suit, filed an interpleader action to determine the allocation of excess funds remaining after the settlement of his claims. As of the April 2021 bench trial, six claimants had timely asserted an interest in the interpleader funds. The claimants fall into three categories. Three – Grady Memorial Hospital Corporation, Orthopaedic & Spine Surgery of Atlanta, LLC, and Atlanta Orthopaedic Surgery Center LLC/Spine Center Atlanta (collectively, "the medical claimants") –

---

[1] OCGA § 11-1-101 (a) et seq.

[2] (Punctuation omitted.) *Patel v. State of Ga.*, 341 Ga. App. 419 (801 SE2d 551) (2017), quoting *State of Ga. v. Howell*, 288 Ga. App. 176 (653 SE2d 330) (2007).

are healthcare providers to whom Chandler was indebted for healthcare services received as a result of his injuries sustained in his personal injury lawsuit. Another claimant, the Radics Revocable Living Trust, had 14 separate funding agreements with Chandler, whereby Radics provided him with cash advances in exchange for a security interest in any funds he received from his personal injury case. Marrick and MedCare ("the appellants") are medical funding companies that purchased Chandler's medical receivables from healthcare providers that treated him.

The medical claimants asserted that they had statutory medical liens against the interpleader funds pursuant to OCGA § 44-14-470. Radics asserted a security interest pursuant to the Georgia UCC. The appellants asserted statutory medical liens and, in addition to or in the alternative, contractual liens pursuant to the UCC.

After a bench trial, the trial court issued a final judgment, finding that with the exception of Grady, all of the medical claimants and the appellants had failed to file timely lien statements as required by OCGA § 44-14-471 (a) and that as a result, those late-filed medical liens were invalidated pursuant to OCGA § 44-14-471 (b).[3]

_____

[3] The trial court found that Grady had preserved its medical lien through compliance with the process set forth in OCGA § 44-14-471 (b).

3

Next, the court found that Radics had, through its agreements with Chandler, taken valid but unperfected UCC security interests in the interpleader funds.[4]

With regard to the appellants, the trial court found that their purported medical liens failed because they were untimely and did not meet the statutory definition of a provider of medical treatment as defined in OCGA § 44-14-471 (a).[5] The court concluded that the appellants' lien claims under the Georgia UCC failed because (1) the statute provides that it is inapplicable "to the extent that . . . [a]nother statute of this state expressly governs the creation, perfection, or priority,"[6] and the appellants, having also filed medical provider liens, could not simultaneously claim a security interest under the UCC; and (2) the funds owed to the appellants by Chandler are for healthcare services to which the Georgia UCC lien statute does not apply.

In accordance with those findings, the trial court gave Grady first priority to the interpleader funds for their claim in the amount of $28,092.30 and granted Radics

---

[4] Radics's security interest was unperfected because it failed to file a financing statement as required by OCGA § 11-9-310 (a).

[5] The provisions of OCGA § 44-14-471 (a) apply to "the operator of the hospital, nursing home, physician practice, or provider of traumatic burn care medical practice," which are defined in OCGA § 44-14-470 (a).

[6] OCGA § 11-9-109 (c) (2).

4

second priority to the entirety of the remaining $225,863.15. The court concluded that "while the medical claimants [including the appellants] may still be creditors of . . . Chandler and have valid claims against him, in the absence of a valid and enforceable security interest in the [e]xcess [f]unds, their claims – with the exception of Grady's hospital lien – are subordinate to Radics's claims in this case."

On appeal, the appellants do not dispute the invalidity of their respective medical liens based on their failure to strictly comply with the medical lien statute. Instead, they argue that the trial court erred by finding that the Georgia UCC did not apply to their liens. We disagree.

The issue of whether the appellants had contractual liens under the Georgia UCC against the excess funds is a question of statutory interpretation and application. As the Supreme Court of Georgia has explained:

> A statute draws its meaning from its text. When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant, and so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law

alike — that forms the legal background of the statutory provision in question.[7]

"If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words."[8] Lien statutes are strictly construed.[9]

"Except as otherwise provided in [the Georgia UCC], a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."[10] "The effect of this section is to give the Article [9] secured party, upon a debtor's default, priority over anyone, anywhere, anyhow except as otherwise provided by the remaining Code priority rules."[11]

---

[7] (Citations and punctuation omitted.) *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017). See OCGA §§ 1-3-1 (a), (c).

[8] (Punctuation and footnotes omitted.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999).

[9] See *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*, 301 Ga. 131, 135 (2) (800 SE2d 362) (2017).

[10] OCGA § 11-9-201 (a).

[11] (Punctuation omitted.) *Continental America Life Ins. Co. v. Griffin*, 251 Ga. 412, 414 (2) (306 SE2d 285) (1983).

6

Liens against a plaintiff's cause of action for the charges of his medical care are established by OCGA § 44-14-470 et seq., and provide

> [a]ny person, firm, hospital authority, or corporation operating a hospital, nursing home, or physician practice or providing traumatic burn care medical practice in this state shall have a lien for the reasonable charges for . . . care and treatment of an injured person, . . . upon any and all causes of action accruing to the person to whom the care was furnished . . . subject, however, to any attorney's lien.[12]

A medical lien, however, "*is only a lien against such causes of action* and shall not be a lien against such injured person."[13] The medical lien statute requires a mandatory specific procedure for perfecting such a lien.[14]

In contrast, security interests arising by agreement are governed by Article 9 of the Georgia UCC.[15] "Under Georgia law, a security interest properly attaches to collateral when: (1) there is a written security agreement signed by the debtor and containing a description of the collateral; (2) the secured party has given value to the

---

[12] OCGA § 44-14-470 (b).

[13] (Emphasis added.) Id.

[14] See OCGA § 44-14-471.

[15] OCGA § 11-9-101 et seq.

debtor; and (3) the debtor has 'rights' in the collateral."[16] Article 9 does not, however, "apply to the extent that . . . [a]nother statute of this state expressly governs the creation, perfection, or priority. . . ."[17] Furthermore, Article 9 "does not apply to . . . [a] lien, other than an agricultural lien, given by statute or other rule of law for services. . . ."[18]

Here, the appellants' liens satisfy the general requirements of OCGA § 11-9-203(a)-(b). The question, however, is whether "[a]nother statute of this state expressly governs the[ir] creation, perfection, or priority" and whether they constitute liens "for services" such that Article 9 does not apply.[19] This analysis turns on the substance of the lien and payment agreements between the appellants and Chandler.

First, the "Medical Bill Payment Agreement" between Marrick and Chandler ("the Marrick Agreement") states that Chandler has suffered personal injuries as a result of an accident, that he has or will make a claim against a third party for

---

[16] *Toland v. Phoenix Inc. Co.*, 855 Fed. Appx. 474, 483 (III) (B) (11th Cir. 2021) (unpublished); OCGA § 11-9-203 (a)-(b).

[17] OCGA § 11-9-109 (c) (2).

[18] OCGA § 11-9-109 (d) (2).

[19] OCGA §§ 11-9-109 (c) (2), (d) (2).

damages in connection with the incident, that he "is indebted or will hereafter become indebted for the expense of healthcare services," and that Marrick has or may purchase the debt from the healthcare providers "and generally agrees to defer collection of the [d]ebt until settlement or other final disposition of the [d]amages [c]laim." Thus, Chandler's debt to Marrick are debts for medical services rendered to him.

Similarly, the "Medical Lien/Letter of Protection/Subrogation Contract" ("the MedCare Contract") between MedCare and Chandler states that it is a "Payment Agreement and Acknowledgment of Assignment of Lien . . . with regard to medical treatment and services rendered to [Chandler]" by a hospital, a physician, and other medical service providers. The MedCare Contract further provides that "an assignment" of the providers "lien rights" to MedCare has or will be made in exchange for valuable consideration paid by MedCare, which "is assuming financial costs and risks in doing so." In addition, the contract contains a directive to Chandler's attorneys to pay directly to Medcare the full sums billed by the providers for services rendered to Chandler "as a result of the personal injuries suffered on 11/12/2014." The MedCare Contract also contains an assignment provision with an acknowledgment that Chandler "shall continue to be bound to [MedCare] as if

9

[MedCare] was the original party billing [him]" and that Chandler "agrees to remain liable to [MedCare] for the full-billed charges of any and all medical treatment, services, and procedures rendered to [him] by [the p]roviders." Thus, Chandler's debts to MedCare are also debts for medical services.

Although the appellants were not the providers of the medical services, they were both holders of those debts via assignments of Chandler's medical debts by his medical providers; there was no new debt or obligation established by either agreement. As a result, the effect the agreements had on Chandler's pre-existing financial obligations was to temporarily delay his repayment on the debts and to memorialize his understanding that the appellants are the new debtors and holders of the associated medical liens.

Next, consistent with medical liens established under OCGA § 44-14-470 (b), the contractual liens claimed by the appellants are liens against any personal injury cause of action arising out of Chandler's accident for which the medical services at issue were provided. The Marrick Agreement describes the nature of the lien:

> [Chandler] hereby assigns, conveys[,] and grants to Marrick a lien upon any and all proceeds derived, promised, paid[,] or recovered as a result of or in connection with the [d]amages [c]laim, including but not limited to liability claims, MedPay or other no-fault claims, uninsured or

10

underinsured motorist claims, and all causes of action hereafter accruing to [Chandler] on account of the Occurrence . . . subject, however, to any attorney[] lien. This agreement and Marrick's lien established hereunder shall apply without limitation to any and all proceeds from any settlement, verdict[,] or judgment and any other proceeds disbursed or disbursable to or for the benefit of [Chandler] in connection of the [d]amages [c]laim.

Both the plain language of the Marrick Agreement, as well as the fact that it tracks the medical lien statute, reflects that it was intended as a medical lien.[20]

The MedCare Contract notes that MedCare is the assignee of Chandler's healthcare providers' lien rights "upon any sums awarded to [Chandler] . . . by judgment or pursuant to a settlement or compromise to the extent of the [medical p]roviders' full-billed charges." The MedCare Contract states that Chandler's attorney "is further directed and authorized to withhold from [Chandler] and pay to [MedCare]" the full sums billed by Chandler's medical providers

from any settlement, judgement, or verdict as may be necessary to satisfy the amounts due and owing under the patient account and to render full payment to [MedCare] prior to any other disbursement. The

---

[20] OCGA § 44-14-470 (b) grants special priority to statutory medical liens "subject, however, to any attorney[] lien."

11

parties acknowledge that this lien, which is entered into for the benefit of [MedCare], is intended to take the highest priority allowed by law.

The language of the MedCare Contract and the Marrick Agreement shows that they are medical liens, which the appellants are now presenting as Article 9 security interests. The obligations secured are Chandler's medical debts stemming from his accident, for which he filed a personal injury action, and the debts are secured via liens on his personal injury action. Liens against a plaintiff's cause of action for the charges of his medical care are specifically established in OCGA § 44-14-470 et seq., which requires strict compliance with rules for the creation and perfection of such liens. A medical lien cannot be established by an agreement that satisfies the less-stringent requirements of an Article 9 security interest, and instead, can only be established through the specific process set forth in OCGA §§ 44-14-470 and 44-14-471. Both OCGA §§ 11-9-109 (c) (2) and (d) (2) require a party asserting a medical lien to proceed under the medical lien statute, and they expressly bar the creation of a medical lien through the process for creating an Article 9 security interest by agreement.[21]

---

[21] We note that the fact that the appellants are not medical providers as required by the medical lien statute, see OCGA § 44-14-470, does not require a different result. The appellants chose to characterize and draft their agreements with Chandler

Accordingly, we affirm the trial court's judgment.

*Judgment affirmed. Reese and Brown, JJ., concur.*

---

in the manner that they did, and the fact that they are not entitled to medical liens does not mean that the medical lien statute does not apply to the debt owed by Chandler such that OCGA § 11-9-109 (c) (2) is not implicated.