667 A.2d 1151

**PENNSYLVANIA NATIONAL BANK &
TRUST COMPANY, Appellant,**

v.

**CCNB BANK, N.A., Stanley D. Adler
and Betty J. Adler, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1995.

Filed Nov. 15, 1995.

626

Stephen A. Moore, Harrisburg, for appellant.

David C. Eaton, Harrisburg, for CCNB Bank, appellee.

Before POPOVICH, SAYLOR and BROSKY, JJ.

POPOVICH, Judge:

The case involves an appeal from the order of the Court of Common Pleas of Dauphin County granting a motion for summary judgment against the plaintiff/appellant, Pennsylvania National Bank & Trust Co. We affirm.

Initially, we observe that a motion for summary judgment may be entered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b). Also, in passing upon a motion for summary judgment, a court must examine the record in a light most favorable to the non-moving party and must resolve all doubts against the moving party. *Heil v. Brown*, 443 Pa.Super. 502, 662 A.2d 669, 671 (1995). Lastly, we will not overturn an entry of summary judgment unless there has been an error of law or clear abuse

of discretion. *McCain v. Pennbank*, 379 Pa.Super. 313, 549 A.2d 1311, 1313 (1988).

Viewed in light of the aforementioned, the facts in this case are undisputed.[1] It is only whether the defendant, CCNB, N.A.,[2] is entitled to judgment as a matter of law which is at issue. Because the facts are undisputed, those recounted by the court below are adopted by this Court; to-wit:

At the heart of this litigation is a $130,000.00 deposit made by defendant, Betty J. Adler, at an office of the defendant, CCNB Bank, N.A., (hereinafter "CCNB"). In recognition of this deposit, CCNB issued to Mrs. Adler a non-negotiable certificate of deposit ("CD"). This first CD was issued January 24, 1990 with a maturity date of July 24, 1990.

Prior and subsequent to 1990, Stanley D. and Betty J. Adler were indebted to CCNB on various demand obligations. These obligations were consolidated on November 28, 1990 and a demand note was issued in the principal amount of $1,706,337.62. This note was in default as of February, 1991.

On June 22, 1990, the Adlers executed a demand promissory note in the amount of $130,000.00 in favor of plaintiff, Pennsylvania National Bank & Trust Company (hereinafter "PNB"). As collateral for this loan, Mrs. Adler pledged a security interest in the CCNB CD. She executed a collateral pledge agreement and assignment of certificate of deposit in favor of PNB on that date. On June 27, 1990, PNB took possession of the CD. No notice of this transaction was provided to CCNB at that time.

On July 24, 1990, the first CD matured. On that date a new non-negotiable fixed maturity CD was issued in the amount of $130,000.00. This second CD bore a maturity date of July 24, 1991. A new collateral pledge agreement and assignment form with respect to the "new" CD were

1. See Appellant's Brief at 13; Defendant's Brief at 2.
2. During the course of litigation, CCNB Bank, N.A., has been succeeded in interest by PNC Bank, N.A. However, for consistency purposes, the defendant shall continue to be referred to as CCNB.

executed by Mrs. Adler in favor of PNB at that time, but were not provided to CCNB until February 28, 1991. On that same date, CCNB executed the receipt portion of the successor assignment and returned it to PNB. At that time, CCNB placed an internal hold on the payment of the CD. Once again, PNB retained physical possession of the CD.

On July 24, 1991, upon maturity of the second CD, Mrs. Adler, accompanied by a representative of PNB, went to a CCNB branch office for the purpose of redeeming the CD. When CCNB refused to redeem the CD but was willing to issue a new CD bearing the endorsement of a notice of CCNB's right of set-off, the transaction was refused by defendants [sic—plaintiff].

Subsequently, on August 5, 1991, a third CD was issued in the principal amount of $130,000.00 bearing a maturity date of February 4, 1992. This third CD was garnered by a PNB representative, unaccompanied by either of the Adlers, and retained in the possession of the bank. Mrs. Adler executed a new collateral pledge agreement and assignment with respect to the newest CD.

Upon maturity of the third CD on February 4, 1992, PNB attempted to redeem the CD at a CCNB branch office. CCNB refused not only to redeem the CD, but also to issue a new CD. The paper evidencing the matured CD remains in the possession of PNB. CCNB has since applied the proceeds of the matured CD to reduce the Adlers' indebtedness to CCNB.

Lower Court Opinion, 10/24/94, at 2–3 (Footnote omitted).

The primary issue in this case, which all concede is one of first impression, is whether Article 9 of the Uniform Commercial Code grants the plaintiff's perfected security interest in a certificate of deposit precedence over the defendant's common law right of set-off against the same collateral held as security involving the same debtor/obligor/Adlers?

▪ Initially, we observe that the right of set-off has long been recognized as part of the common law in Pennsylvania.

See, e.g. *Aarons v. Public Service Building & Loan Association*, 318 Pa. 113, 178 A. 141 (1935), wherein a judgment creditor attached a depositor's checking account before the bank exercised its right of set-off. Nonetheless, because the depositor's debt to the bank had matured prior to the creditor's attachment, our Supreme Court concluded that the bank could set-off the checking account balance against the money owed despite the intervening attachment. Also, the Court held that once the debt "matured," the bank's right of set-off extinguished the depositors rights in the account. Further, as herein relevant, the Court noted that the set-off arose by operation of law and the bank "was not required first to make book entries charging one account and crediting the other before asserting its right to priority." *Id.* at 116, 178 A. at 142. Accord *Duffy v. Fifty–Eighth & Chester Avenue Building & Loan Association*, 325 Pa. 127, 189 A. 307 (1937); *Adolph Bergman Building & Loan Association v. Blaul*, 318 Pa. 126, 178 A. 140 (1935).

▮▮▮ *Aarons* has been interpreted as "creat[ing] a doctrine of automatic set-off in Pennsylvania." *Pittsburgh National Bank v. United States*, 657 F.2d 36, 38 (3rd Cir.1981). This means:

> Immediately upon the maturity of a debt owed by a depositor, the bank's right to set-off, by operation of law, extinguishes the depositor's rights to the account. Set-off is not overridden by the filing or service of attachment execution or garnishment. In effect, the garnishee-bank's common law right to set-off gives it a right to self-help that takes priority over other creditors claiming a right to the funds on deposit.

*Royal Bank of Pennsylvania v. Selig*, 434 Pa.Super. 537, 644 A.2d 741, 744 (1994) (Citations omitted). And, the Uniform Commercial Code has been interpreted as not modifying or suspending that aspect of the common law granting "a bank ... a general lien upon or right of set-off against all money or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to it...." *Id.* (Citation omitted). Nor has the Uniform Commercial Code been

held applicable to set-offs, especially since Section 9104 excludes "any right of set-off" from its coverage. 13 Pa.C.S.A. § 9104(9); see also *Citibank (New York State), N.A. v. Interfirst Bank,* 784 F.2d 619, 621 (5th Cir.1986); *Republican Valley Bank v. Security State Bank,* 229 Neb. 339, 426 N.W.2d 529, 531 (1988); but see *Credit Alliance Corp. v. National Bank of Georgia,* 718 F.Supp. 954 (N.D.Ga.1989); *Citizens National Bank of Whitley County v. Mid–States Development Co.,* 177 Ind.App. 548, 380 N.E.2d 1243 (1978).

Consistent with the common law right of set-off in this Commonwealth, which is intact and not superseded by the adoption of the Uniform Commercial Code, we find that Article 9 of the Code *does not dictate* the analysis to be applied in deciding the priority scheme between a security interest and a set-off in the same collateral. Rather, we hold that where a debtor's interest is amenable to set-off, the security interest is limited to the extent that the debtor's obligation to the bank asserting set-off exceeds the value of the non-negotiable instrument (here the CD). Where, however, no asset remains to which the security interest may attach, the holder of the perfected security interest collects nothing.

Applying the preceding rationale here, we observe that the Adlers were indebted to CCNB, at the time the $130,000.00 CD was issued, in the amount of $1,706,337.52. See Affidavit of John J. Cosgrove, Assistant Vice–President of CCNB ("note no. 9202 on November 28, 1990, . . . a demand obligation"). With the "demand obligation" exceeding the value of the CD held by CCNB, the Adlers' obligation had matured. See *Aarons,* supra; *Selig,* supra; Answer with New Matter of CCNB Bank, N.A., to Plaintiff's Complaint, Paragraphs 17, 23–25, 29, 38, 50 & 52; and compare with *In re Petragalia,* 156 B.R. 474 (1993).

The fact that CCNB chose not to exercise the right of set-off at the time the Adlers' debt exceeded the CD does not prejudice the bank's right of set-off. "The bank's right of set-off amounted to no more than an open-ended credit arrangement." *Pittsburgh National Bank v. United States,* 498

F.Supp. 101, 104 (W.D.Pa.1980), aff'd, 657 F.2d 36 (3rd Cir. 1981). Therefore, the money on deposit with CCNB was under its sole control, which permitted it, at anytime, without notice to terminate this credit arrangement. And, because the Adlers' obligation to CCNB was evidenced by a "demand" note, CCNB's lien (by operation of law) automatically extinguished the Adlers' right to the CD.

At no time since the indebtedness matured could the Adlers have compelled CCNB under state law to deliver any of the CD money to them. *Id.* Thus, the Adlers had no property right in the account, and there was nothing to which their creditor/Pennsylvania National Bank & Trust Co. could claim an interest. *Id.* Accordingly, the Adlers' execution of a promissory note, collateral pledge agreement and assignment neither created nor transferred any interest (legal or equitable) in the CD issued by CCNB once the Adlers' indebtedness exceeded the value of the CD. *Aarons,* supra; *Selig,* supra; *Pittsburgh National Bank,* supra. This imbalance existed prior to CCNB learning of the claimed interest of the appellant in the CD. Consequently, the appellant took nothing with the Adlers' security agreements professing a security interest in the CD.

As a result, finding no merit to any of the appellant's arguments proffered on appeal,[3] we affirm summary judgment in favor of CCNB.

Order affirmed.

SAYLOR, J., concurs in the result.

3. The appellant asks this Court to adopt the "equitable" or "Texas" rule as presented in *Republican Valley Bank v. Security State Bank,* 426 N.W.2d 529, 229 Neb. 339 (1988) and *Citibank (New York State) N.A. v. Interfirst Bank of Wichita Falls, N.A.,* 784 F.2d 619 (5th Cir.1986), neither of which recognizes the applicability of Article 9 of the Uniform Commercial Code to transactions involving a right of set-off.

Inasmuch as "right of set-off" is still viable in this Commonwealth, we see no need to venture to other jurisdictions to secure alternative theories to resolve the priority question posed here for our consideration. See *Aarons v. Public Service Building & Loan Association,* 318 Pa. 113, 178 A. 141 (1935).