**COMMERCIAL NATIONAL BANK, OF PENNSYLVANIA, f/k/a Commercial National Bank of Westmoreland County, Appellant,**

v.

**SEUBERT & ASSOCIATES, INC., The Cincinnati Insurance Company, The Cincinnati Casualty Company, and the Cincinnati Indemnity Company, and Cable & Associates Insurance, Agency Inc., Appellees.**

**Commercial National Bank, of Pennsylvania, f/k/a Commercial National Bank of Westmoreland County, Appellant,**

v.

**Seubert & Associates, Inc., Presque Isle Insurance Division, Fireman's Insurance Company of Washington, D.C., and Cable & Associates Insurance Agency, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued June 20, 2002.

Filed Sept. 6, 2002.

John C. Hansberry, Pittsburgh, for Commercial Nat'l.

John B. Cromer, Pittsburgh, for Seubert & Assoc.

Martha Helmreich, for Cincinnati Indemnity.

BEFORE: JOHNSON, JOYCE and, HESTER, JJ.

JOHNSON, J.:

¶ 1 Commercial National Bank of Pennsylvania ("Bank") appeals from the trial court's denial of its summary judgment motion and the entry *sua sponte* of summary judgment in favor of Presque Isle Insurance Division, Fireman's Insurance Company of Washington, D.C. ("Insurance Company") and Seubert and Associates, Inc. ("Successor Agency"). Bank contends the court erred in concluding that Bank's security interests in the insurance commissions and expirations of insurance policies generated by the now-defunct Cable and

Associates Insurance Agency ("Agency") were inferior to the rights and interests of Insurance Company and its assignee, Successor Agency. Successor Agency cross-appeals asserting that the trial court erred in concluding that Bank obtained a perfected security interest. After review, we vacate the court's grant of summary judgment to Insurance Company and Successor Agency and its denial of Bank's summary judgment motion and remand for proceedings not inconsistent with this Opinion.

¶ 2 This case concerns the rights to Agency's commissions and the expirations relating to insurance policies written by Agency through Insurance Company. In its amended action for declaratory judgment, Bank valued the commissions requested to be $152,000 based on the total commissions generated by Agency's policies in 1999. Bank valued the expirations at the same amount. The parties agree that the term "expirations" refers to the information concerning each insurance policy including the name and address of the insured, a description of the items insured and the expiration date of the policy. The expirations are a valuable asset in the nature of good will, as they allow the agency to renew current business and develop new business.

¶ 3 Agency was an independent insurance agency, which in December 1995 entered into an agency agreement with Insurance Company ("Agency Agreement"). The Agency Agreement authorized Agency to write insurance policies through Insurance Company. The Agency Agreement stated that the expirations of the policies were Agency's property "provided [Agency] paid premiums due [Insurance Company] and that [Agency was] solvent." Agency Agreement, § VIII. A.; R.R. at 30a. Insurance Company also had copies of the expiration information in its own files for its own use but pledged not to use its records of the expirations "in any way for the sale, service, or renewal of any form of insurance or noninsurance purposes, nor ... make the expiration information available to other Agents." Agency Agreement, § VIII. C.; R.R. at 30a.

¶ 4 If Agency, however, was "unable to post a form of security acceptable" to Insurance Company, Agency's records would "become" Insurance Company's property. Agency Agreement, § VIII. D.; R.R. at 30a. In that event, the agreement continued: "We will use them to service policyholders or we will transfer them to another Agent for the purpose of servicing them. If we sell or transfer rights, we will pay you whatever we receive, less expenses and premiums owed us." Agency Agreement, § VIII. D.; R.R. at 30a. Insurance Company did not file any financing statements regarding this security interest.

¶ 5 In regard to the commissions, the Agency Agreement specified that Insurance Company would pay the commissions at the rates specified in the agreement but that they would offset the commissions with any obligations Agency owed Insurance Company. Agency Agreement, § III.; R.R. at 26a. Additionally, if Insurance Company had to refund any portion of a premium to the insured, the agreement required Agency to refund a similar portion of its commission. Agency Agreement, § III. B.; R.R. at 26a. It was apparently the policy of Insurance Company to handle all of the policies written by Agency as direct bill policies in which the insured would pay Insurance Company directly and then Insurance Company would forward the relevant commission to Agency. Therefore, Agency did not owe Insurance Company any premiums.

¶ 6 The Agency Agreement provided for automatic termination upon dissolution of Agency or upon written notice in the event

of fraud, insolvency, misappropriation of funds or for breach of the agreement. Agency Agreement, § VI. C. 4.; R.R. at 27a. In the event of termination, the agreement required Agency to continue to service and renew business according to regulatory requirements. Agency Agreement, § VI. D. 2.; R.R. at 28a. Additionally, the terms and conditions would continue in force as long as the polices written during the agreement remained in effect. Agency Agreement, § VI. D. 3.; R.R. at 28.

¶ 7 In October 1997, Bank agreed to lend Agency one million dollars in exchange for a security interest in "all inventory, chattel paper, accounts, equipment, general intangibles and fixtures" including after-acquired collateral ("Loan Agreement"). Loan Agreement; R.R. at 15a. Bank perfected the security interest by filing financing statements. The trial court concluded that the expirations fit within the general intangibles category and the commissions fit within the accounts category.

¶ 8 As a result of Agency's insolvency, Insurance Company terminated the Agency Agreement in March 2000. Insurance Company then transferred all polices generated and serviced by Agency to Successor Agency without repaying Agency's obligation to Bank out of the expirations or commissions related to Agency's policies. Bank asserts that it was in contact with another firm willing to take Agency's book of business subject to Bank's security interest.

¶ 9 In August 2000, Bank commenced a declaratory judgment action against Insurance Company, Successor Agency and, later, Agency concerning the rights to Agency's expirations currently under the control of Successor Agency and to commissions currently collected by Successor Agency. Bank also sought a declaratory judgment in a companion case raising similar theories against The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company (collectively "Cincinnati"), in addition to Successor Agency and Agency (1688 WDA 2001). The trial court entered judgment against Agency. In May 2001, Bank filed a motion for summary judgment against Insurance Company and Successor Agency. In the companion case, Cincinnati filed a summary judgment motion against Bank, and Successor Agency requested summary judgment in its brief in opposition to Bank's motion.

¶ 10 On August 27, 2001, the Honorable Daniel J. Ackerman entered an order granting summary judgment *sua sponte* to Insurance Company and Successor Agency and, in the companion case, Cincinnati. The court determined that Bank had a perfected security interest in Agency's commissions and expirations. However, the court held that Bank's interest was inferior to Insurance Company's setoff rights in the commissions and that Bank's interest in the expirations could not compel Insurance Company to relinquish property that was in fact Insurance Company's. The court stated that Bank's "security interest cannot deprive the [Insurance Companies] of the right to use their own property." Trial Court Opinion, 8/27/01, at 6. Bank now appeals the order. Furthermore, Successor Agency cross-appeals challenging the court's finding that Bank held a perfected security interest in the commissions and expirations.

¶ 11 Bank presents the following questions for our review:

I. Whether the expirations related to policies of insurance are the property of the agency that generated the policies, where the agency agreement and the standards of the insurance industry recognize and protect

the agency's exclusive, undisputed ownership right?

II. Whether [Uniform Commercial Code ["UCC"]] Article 9, 13 Pa.C.S. § 9001 et seq., determines the priority between creditors in circumstances where a purported right to a contractual setoff is nothing more than an unperfected security interest and where the common law does not recognize a right of setoff in the holder of an unperfected security interest[?]

III. Whether a creditor's perfected security interest in a debtor's collateral is superior to a second creditor's unperfected security interest in the same collateral?

Brief for Appellant at 5. We determine that Bank's three questions may be summarized as two questions: (1) whether the trial court erred in concluding that Bank's Perfected security interest in Agency's expirations was inferior to Insurance Company's and Successor Agency's interests, and (2) whether the trial court erred in concluding that Bank's perfected security interest in Agency's commissions was inferior to Insurance Company's contractual setoff right in the commissions and also to Successor Agency's interest in the commissions by assignment from Insurance Company.

¶ 12 Successor Agency presents the following questions in its cross-appeal:

I. Whether the trial court erred, to the extent that it found [Bank] had a perfected security interest in [Agency's] unearned commissions and expirations when [Agency] did not acquire the right to the collateral and thus it did not attach?

II. Whether the trial court erred in finding [Bank] had a perfected security interest in [Agency's] unearned commissions and expirations

when this collateral should be considered "an interest in an insurance policy" and/or "an assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract" and thus excluded from Article 9 coverage?

Brief for Appellee/Cross–Appellant at 1.

■ ¶ 13 When reviewing a trial court's decision to grant a motion for summary judgment, "[a] reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (Pa.2001). As summary judgment is a question of law, our review is plenary. *See id.* Pennsylvania Rule of Civil Procedure 1035.2 governs a trial court's decision to grant summary judgment. *See id.* A court may enter summary judgment where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. *See id.* If the non-moving party bears the burden of proof on an issue, that party may not rely merely on its pleadings or answers in order to survive summary judgment, but must adduce sufficient evidence essential to its case. *See id.* "Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* The parties agree that there are no material facts at issue and therefore that summary judgment is appropriate to determine the legal issues in the case.

## I. Successor Agency's Cross–Appeal Challenging Bank's Perfection of Security Interests Under the UCC.

¶ 14 We will first address Successor Agency's cross-appeal because the applica-

bility of Article 9 of the UCC and the determination that Bank had a perfected security interest in the commissions and expirations are central to the other issues in the case.

## A. Applicability of UCC to Expirations and Commissions

¶ 15 Successor Agency contends that the commissions and expirations are excluded from any Article 9 analysis. Brief for Appellee/Cross–Appellant at 11–15. Successor Agency asserts that the expirations are excluded from Article 9 because newly revised Section 9109(d)(6) excludes "[a]n assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract." 13 Pa.C.S. § 9109(d)(6); Brief for Appellee/Cross–Appellant at 11. Successor Agency also asserts that the commissions and expirations are excluded from an Article 9 analysis under Section 9109(d)(8). Brief for Appellee/Cross–Appellant at 13. Section 9109(d)(8) states that Article 9 excludes "[a] transfer of an interest in or an assignment of a claim under a policy of insurance, other than an assignment by or to a health care provider of a health-care-insurance receivable and any subsequent assignment of the right to payment." 13 Pa.C.S. § 9109(d)(8).

¶ 16 Preliminarily, we note that the cited sections are in the recently revised UCC and are not retroactive prior to July 2001 and are therefore inapplicable to the case at hand. *See Budnick v. Budnick*, 419 Pa.Super. 172, 615 A.2d 80, 83 (1992) ("[I]n the absence of clear language to the contrary, statutes must be construed to operate prospectively only."); *see also* 1 Pa. C.S. § 1926.

¶ 17 If we were to analyze the merits of the claim, we would also conclude that the trial court did not err in analyzing the rights to the commissions and expirations under Article 9. In regard to Section 9109(d)(6), Successor Agency argues that Bank actually had an interest in the Agency Agreement rather than the commissions and expirations because the agreement was a performance agreement requiring Agency's performance in exchange for the commissions and expirations. Brief for Appellee/Cross–Appellant at 11–13. Successor Agency fails to cite authority to support the proposition that the agreement rather than the stated collateral was in fact securing the loan or explain how such reasoning would not exclude collateral previously considered within Article 9. Therefore, we are not convinced that the Agency Agreement should be construed as such.

¶ 18 In regard to the insurance exclusion in Section 9109(d)(8), we note that the prior version of Article 9, which controls this case, similarly did not apply to "a transfer of an interest or claim in or under any policy of insurance except as provided with respect to proceeds ... and priorities in proceeds...." 13 Pa.C.S. § 9104(7). Our Pennsylvania courts have not analyzed this issue previously. Therefore, we may look to our sister states and the federal courts for guidance as one of the stated purposes of the UCC is "[t]o make uniform the law among the various jurisdictions." 13 Pa.C.S. § 1102(b)(3). Our Supreme Court has noted that "[w]hile it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority, and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like that contemplated by the [UCC]." *Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pennsylvania*, 469 Pa. 188, 364 A.2d 1331, 1335 (1976).

¶ 19 A number of jurisdictions have analyzed questions involving security interests

in insurance commissions and expirations and applied Article 9 of the UCC. The United States Bankruptcy Court, applying Article 9 as adopted in Massachusetts, held that an agency agreement transferring ownership of the expirations to the insurance company in the event of the insurance agency's failure to pay premiums constituted an unperfected security interest under Article 9. *See In re Roy A. Dart Ins. Agency, Inc.,* 5 B.R. 207 (Bankr. D.Mass.1980). Furthermore, the court concluded that the insurance company's interest, under Article 9, was inferior to the interests of the bankruptcy trustee and the secured creditors who had perfected their interests. *See id.; see also Lloyds Credit Corp. v. McClain Heller Ins., Inc.,* 262 N.J.Super. 211, 620 A.2d 472 (Law.Div. 1992) (applying Article 9 to insurance agency's expirations); *In re Davies Ins. Service, Inc.,* 33 B.R. 252 (Bankr.W.D.Pa. 1983) (applying Article 9 to insurance agency's expirations). The Massachusetts bankruptcy court concluded that the default clause in the agreement established a security interest because it was "simply a condition subsequent functioning as the usual security agreement to cause the transfer assignment, ·or forfeiture of the debtor's property on breach of a duty to pay or perform some obligation." *Id.* at 211 (citing UCC § 1–201(37)). Furthermore, the court analyzed a prior version of the Article 9 exclusions that also excluded "a transfer of an interest or claim in or under any policy of insurance." *Id.* at 212 n. 5 (quoting UCC § 9–104). The court concluded that the subsection was "inapplicable in the present case in that [the subsection] applies to rights under insurance policies only and does not extend to all insurance-related transactions." *Id.* at 212 n. 5).

■ ¶ 20 The cases cited by Successor Agency in support of excluding the com-

missions and expirations from Article 9 are distinguishable from the case at hand and those discussed above. The cited cases involve contests concerning refunded unearned insurance premiums between insureds or their bankruptcy trustees and those financing the payment of the insureds' premiums rather than conflicts between insurance companies and agencies involving commercial agreements relating to commissions and expirations. *See In re Remcor, Inc.,* 186 B.R. 629 (Bankr. W.D.Pa.1995) (finding interest in unearned premiums advanced by financing company to insured excluded from Article 9); *see also In re Duke Roofing Co.,* 47 B.R. 990 (Bankr.E.D.Mich.1985); *In re Big Squaw Mountain Corp.,* 122 B.R. 831 (Bankr. D.Me.1990); *In re Expressco Inc.,* 99 B.R. 395 (Bankr.M.D.Tenn.1989). Therefore, like our sister courts, we conclude that the trial court did not err in analyzing the interests in commissions and expirations of insurance policies under Article 9 because the insurance exclusion applies to rights under insurance policies only and does not extend to all insurance-related transactions.

### B. Attachment

■ ¶ 21 Successor Agency also asserts that Bank did not have a perfected security interest in the expirations and commissions because attachment never occurred. Brief for Appellee/Cross–Appellant at 4. Successor Agency contends that attachment could not occur because Agency failed to remit the premiums to Insurance Company and therefore, never acquired any rights to the collateral. Brief for Appellee/Cross–Appellant at 8–9.

¶ 22 For attachment to occur under the UCC, the following three elements must be met: (1) the debtor must have signed a security agreement with a description of the collateral or the secured party must

have possession of the collateral; (2) the secured party must have given the debtor value for the collateral secured; and (3) the debtor must have rights in the collateral. *See* 13 Pa.C.S. § 9203 (Attachment and enforceability of security interest; proceeds, formal requests). We find that Insurance Company, in the agreement, acknowledged that the expirations were Agency's "property" and thus Bank satisfied the requirement that the debtor, Agency, had rights in the collateral. *See* 13 Pa.C.S. § 9203(a)(3) (recently renumbered § 9203(a)(2)) (stating that attachment requires the debtor to have rights in the collateral), Agency Agreement, § VIII. A.; R.R. at 30a. As the other elements of attachment and perfection are undisputed, we conclude that Bank perfected its security interest in the expirations. This determination of perfection is crucial because under Article 9, absent certain exceptions, a perfected security interest is superior to any other security interest that is perfected later in time or is never perfected. *See* 13 Pa.C.S. § 9312(e) ("Conflicting security interests rank according to priority in time of filing or perfection."). We will discuss the status of Insurance Company's interest and the resulting relative priorities of Bank's and Insurance Company's interests in the expirations under our discussion of Bank's appeal.

¶ 23 In regard to the attachment of Bank's interest in the commissions, we conclude that the Agency Agreement granted Agency rights to the commissions. Agency Agreement, § III.; R.R. at 26a. We note that Insurance Company stated that because Insurance Company directly billed its insured, Agency did not owe any unpaid premiums as Successor Agency's argument suggests. Brief for Appellee at 9. Additionally, the Loan Agreement included an after-acquired property clause in addition to the accounts category of collateral. Loan Agreement; R.R. at 15a.

Therefore, we conclude that the trial court did not err in concluding that the security interest had attached and furthermore, that Bank had a perfected security interest in the commissions. *See* 13 Pa.C.S. § 9204 (After-acquired property; future advances). As with the expirations, we will discuss the status of Insurance Company's interest and the resulting relative priorities of Bank's and Insurance Company's interests in the commissions under our discussion of Bank's appeal.

## II. Bank's Appeal

### A. Expirations

¶ 24 In its first question, Bank contends that the trial court erred in concluding that Insurance Company's right to the expirations was superior to Bank's. Brief for Appellant at 10–11. Bank notes that it was not requiring physical control of Insurance Company's records concerning the expirations, which would potentially interfere with Insurance Company's duties to its insureds, but merely the return of the economic value commensurate with the expirations. Reply Brief for Appellant at 3.

¶ 25 Bank contends that in the insurance industry, insurance companies grant agencies freedom from interference in the use of expirations, including pledging them to secure a loan, because an agent should have proprietary rights in the clientele it develops. Brief for Appellant at 13–16. Bank asserts that the Agency Agreement granted Agency the exclusive right to use the expiration information for the maintenance of existing business and the solicitation of future business. Brief for Appellant at 10. Although Insurance Company would maintain copies of the expiration information, Bank notes that the Agency Agreement specified that Insurance Company would not use that information in derogation of Agency's ownership rights in

the expirations. Brief for Appellant at 10. Therefore, Bank contends, Insurance Company did not have a right to use the expirations in its possession or to transfer the information to Successor Agency for the servicing of the policies without compensating Bank, who had a perfected security interest in the expirations. Brief for Appellant at 10–11. Bank asserts that the default clause relating to. expirations provided Insurance Company with merely an unperfected security interest in the expirations. Brief for Appellant at 18. Bank claims that the trial court's ruling allows insurance companies to destroy an agency's business and goodwill by allowing the insurance companies the ability to buy, sell and use the expiration information at will. Brief for Appellant at 19. We agree.

¶ 26 We disagree with the trial court's analysis of the expiration issue. The trial court held that the Loan Agreement could not attach to the information contained in Insurance Company's own files when the Loan Agreement was between Bank and Agency alone. Trial Court Opinion, 8/27/01, at 6. We note that the term "expirations" has been interpreted to include not merely the information but rather the exclusive right to *use* the information to maintain and secure additional business. *See In re Roy A. Dart Insurance Agency,* 5 B.R. at 209. The Agency Agreement clearly specifies that Insurance Company would not *use* the records for marketing purposes or *refer* such information to another agency, absent termination of the agreement. Agency Agreement, § VIII. C; R.R. at 30a. Therefore, we conclude that the collateral secured by the general intangible category of the Loan Agreement does not impact the files stored in Insurance Company's office but rather the files held and serviced by Agency and the right of Insurance Company to transfer those files to Successor Agency.

■ ¶ 27 Having concluded that Insur-` ance Company's mere possession of copies of the expirations does not grant superior rights to Insurance Company, we must now determine whether Insurance Company's interest in the expirations as defined by the Agency Agreement is in fact a security interest. Notwithstanding the strong default language of the Agency Agreement, if the Insurance Company's interest is a security interest it will be inferior to Bank's because, unlike Bank, Insurance Company failed to perfect its interest by filing. *See* 13 Pa.C.S. § 9312(e). As discussed in reference to the Successor Agency's cross-appeal, Pennsylvania courts will look to the reasoning of sister states when addressing issues under the UCC unless previously addressed by our courts. *See Nat'l Bank & Trust Co. of Cent. Pennsylvania,* 364 A.2d at 1335. The UCC defines a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." 13 Pa.C.S. § 1201. The agency agreement in *In re Roy A. Dart Ins. Agency, Inc.* used language similar to the clause in the Agency Agreement in this case relating to the transfer of the ownership of the expirations to the insurance company in the event of the agency's failure to pay premiums. *See In re Roy A. Dart Ins. Agency,* 5 B.R. at 210. The court focused on the fact that, absent default, the expirations would "remain" the agency's property. *See id.* at 212. "The use of the word 'remain' indicates that the parties intended that the ownership interest in the expirations resided with the agent prior to the termination and subsequent default in payment of premiums." *Id.* The court continued, "[c]ommon sense dictates that the parties intended the subject clause to create a security interest." *Id.* at 213. The court thus concluded that the clause constituted a security agreement under Arti-

cle 9. *See id.* at 214–217. Furthermore, the court found that the insurance company merely had an unperfected security interest inferior to the interests of the bankruptcy trustee and the secured creditors who had perfected their interests. *See id.; see also Lloyds Credit Corp.,* 262 N.J.Super. 211, 620 A.2d 472; *Matter of Davies Ins. Service, Inc.,* 33 B.R. 252 (relying on the reasoning in *In re Roy A. Dart Ins. Agency,* 5 B.R. at 213). We note that the clause in this case also used the word "remain": "Expirations and records *remain* [Agency's] property provided [Agency] paid premiums due us and that [Agency] is solvent." Agency Agreement, § VIII. A.; R.R. at 30a (emphasis added).

¶ 28 Insurance Company contends that the Agency Agreement did not establish a security interest because the section in question, Section VIII, Ownership of Expirations, is not meant to secure a payment or performance of an obligation but rather to allow Insurance Company to abide by its duties to service its insured. Brief for Appellee at 9. Insurance Company relies on subsection D. of Section VIII:

> If you are unable to post a form of security acceptable to us, your records become our property. We will use them to service policyholders or we will transfer them to another Agent for the purpose of servicing them. If we sell or transfer rights, we will pay you whatever we receive, less expenses and premiums owed us.

Agency Agreement, § VIII. D.; R.R. at 30a. Insurance Company cites *In re Daniels–Head & Associates,* 819 F.2d 914 (9th Cir.1987) to distinguish this case from the decision in *In re Roy A. Dart Ins. Agency.* Brief for Appellee at 10–11. The court in *In re Daniels–Head & Associates* distinguished *In re Roy A. Dart Ins. Agency* by noting that the agreement in that case did not contain the word "remain" but instead specified that the records were to be transferred to the insurance company upon thirty days notice. *See In re Daniels–Head & Associates,* 819 F.2d at 920. The court opined that, because the records would be returned, the purpose of the section was not to create a security interest to secure the payment of premiums but instead to ensure that the policies would be continuously administered. *See id.*

¶ 29 Not only does Section VIII of the Agency Agreement in this case contain the word "remain" as in *In re Roy A. Dart Ins. Agency,* but a later section also suggests that the expirations would continue in Agency's control in the event of the termination of the agreement: "Terms and conditions, except as modified by writing, continue in force as long as policies written during the original Agreement remain in effect." Agency Agreement, § VI. D. 3.; R.R. at 28a. Therefore, we conclude that the intent expressed in the Agency Agreement was to create a security interest in the expirations.

¶ 30 We conclude, in agreement with our sister courts, that the language in Agency Agreement Section VIII, D. constitutes a security interest under Article 9. Furthermore, Insurance Company never perfected the interest because Article 9 requires a secured party to file with the appropriate agency in order to perfect an interest in general intangibles. *See* 13 Pa.C.S. § 9302(a) ("A financing statement must be filed to perfect all security interests [unless specifically excepted]."). Therefore, we conclude that the trial court erred in finding that Insurance Company's unperfected security interest in the expirations was superior to Bank's perfected security interest. *See* 13 Pa.C.S. § 9312(e) (priority given to secured creditor that is first to file or perfect). We conclude, therefore, that the court erred in granting Insurance Company's summary judgment motion and

denying Bank's motion. We vacate the order on this issue and remand to the trial court to grant Bank's summary judgment motion as it regards expirations and determine the appropriate award of damages.

## B. Commissions

■ ¶ 31 In regard to Bank's second question, Bank contends that the court erred in concluding that Insurance Company's setoff rights in the commissions had priority over Bank's perfected security interest. Brief for Appellant at 10–11. Bank asserts that Insurance Company's purported setoff right was merely a contractual right that granted a security interest, which Insurance Company never perfected. Brief for Appellant at 10–11.

¶ 32 Bank disputes the trial court's conclusion that the Agency Agreement granted Insurance Company a contractual setoff right superior to a perfected security interest under Article 9. Brief for Appellant at 10–11. Bank notes that this Court has found that a bank's common law setoff right, commonly referred to as a banker's lien, is excepted from the UCC requirements under Section 9104 and that such a setoff has priority over other creditors. Brief for Appellant at 20 (citing *Pennsylvania Nat'l Bank & Trust Co. v. CCNB Bank, N.A.*, 446 Pa.Super. 625, 667 A.2d 1151, 1153–1154 (1995)). Section 9104 states that Article 9 "does not apply ... to any right of set-off." 13 Pa.C.S. § 9104(9). However, Bank urges us to conclude that the setoff right granted to banks should not be extended to non-bank entities. Brief for Appellant at 10.

¶ 33 Bank asserts that the court's holding "frustrates UCC Article 9's fundamental purpose of ensuring that creditors like [Bank] receive adequate notice of other encumbrances and, therefore, constitutes an error of law." Brief for Appellant at 10. Bank contends that its rights should

have been determined superior because Bank complied with the requirements of the UCC and therefore has a perfected security interest superior to Insurance Company's unperfected interest in the same collateral. Brief for Appellant at 10–11.

¶ 34 We agree with Bank's assertion that the setoff right excluded by Section 9104(9) should not apply to the contractual provisions in this case. In *Pennsylvania Nat'l Bank and Trust Co.*, we affirmed the trial court's grant of summary judgment and held that the common-law setoff right gave the bank a right to self-help that took priority over other creditors claiming a right to the funds. *See Pennsylvania Nat'l Bank & Trust*, 446 Pa.Super. 625, 667 A.2d 1151 (1995). However, our research has not revealed a situation in which the setoff exclusion has been applied outside of a bank context other than cases involving the governmental setoff right under common law. *See In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724 (Bankr. E.D.Pa.2000); *In re Metropolitan Hospital*, 110 B.R. 731 (Bankr.E.D.Pa.1990).

¶ 35 Bank urges this Court to follow the reasoning of the Eleventh Circuit decision in *Griffin v. Continental American Life Ins. Co.*, 722 F.2d 671 (11th Cir.1984), which concluded that the setoff exclusion should be interpreted such that the requirements of Article 9 need not be complied with in order to create a setoff right but that the exclusion does not remove setoff rights from the priority rules of the UCC. Brief for Appellant at 21–23. We decline to follow *Griffin* as Pennsylvania courts have concluded explicitly that a bank's setoff rights are excluded from the UCC priority analysis and in fact are superior to other interests under common law. *See Pennsylvania Nat'l Bank & Trust*, 667 A.2d at 1154. However, we acknowledge the usefulness of the Eleventh Circuit's

analysis of the purpose of the setoff exclusion. The court quoted a work by Professor Gilmore, a principal reporter for Article 9, as follows:

This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course, a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan dancing. A bank's right to set-off against a depositor's account is often loosely referred to as a 'banker's lien' but the 'lien' usage has never led anyone to think that the bank held a security interest in the bank account. Banking groups were, however, concerned lest someone, someday, might think that a bank's right of set-off, because it was called a lien, was a security interest. Hence, the exclusion, which does no harm except to the dignity and self-respect of the draftsmen.

*Griffin*, 722 F.2d at 673 (quoting Gilmore, Security Interest in Personal Property (1965), at 315–316). Therefore, we conclude that the setoff right exclusion in the controlling version of the UCC is in fact limited to banks and not applicable to the case at hand. Were we to apply the exclusion to the setoff right in the present agreement, we would open the door to many others inserting setoff language into their contracts. We would thus undermine one of the major purposes of Article 9, which is to create a notification system whereby creditors can assure themselves of their priority rank by checking the relevant registries. We do not believe this was the intention of the setoff exclusion. We note, however, that the setoff exclusion has been substantially amended in the revised Article 9 and acknowledge that the above analysis may not apply to the revised setoff exclusion in Section 9109(d)(10).

■ ¶ 36 Therefore, because Bank had a perfected security interest where Insurance Company did not, we conclude that Bank's security interest in the earned commissions of Agency is superior to any contractual setoff right of Insurance Company. *See* 13 Pa.C.S. § 9312(e). However, even though the parties stipulated that no facts were in dispute, the record before this Court is unclear as to which commissions were in fact earned by Agency and thus subject to Bank's security interest. We acknowledge that this issue was not before the trial court because the trial court found that *all* the commissions were Insurance Company's property.

■ ¶ 37 We direct the trial court to determine which commissions, if any, Agency earned under the terms of the Agency Agreement. We note that Insurance Company asserts that, under statute, Agency, and thus Bank by assignment, did not have a right in the post-termination commissions. Brief for Appellee at 11–12. Insurance Company states that 40 P.S. 241.1(b)(3) permits an insurance company to discontinue servicing of an agency's polices if the agency agreement is terminated for insolvency, as was the case between Insurance Company and Agency. Brief for Appellee at 12. Bank argues that, although the statute does not protect Agency post-termination, the contract controls and does protect the continued servicing and thus the right to the commissions. Reply Brief for Appellant at 5–6. We agree that the Agency Agreement does not terminate Agency's right to the commissions automatically upon termination: "Terms and Conditions, except as modified in writing, continue in force as long as policies written during Agreement remain in effect." Agency Agreement,

§ VI. D. 3.; R.R. at 28a. However, we note that Insurance Company and Agency corresponded in writing during March 2000 at which time Agency waived any notice requirement for termination of the Agency Agreement. Insurance Company responded that it terminated the agreement and requested that Agency transfer the records to another agency for servicing. Brief for Appellant at 12; 3/16/00 Correspondence to Insurance Company, R.R. at 154a; Correspondence to Agency 3/24/00, R.R. at 155a. The record does not indicate that Agency objected to this request. Therefore, we conclude that Agency and therefore Bank did not have any rights to post-termination commissions. However, the record is unclear as to whether any pre-termination commissions were in question.

¶ 38 On remand, we direct the trial court to determine whether any earned commissions are unpaid under the terms of the Agency Agreement. We therefore vacate the summary judgment granted to Insurance Company and Successor Agency and the denial of Bank's summary judgment motion and remand to the trial court for proceedings not inconsistent with this Opinion.

¶ 39 Order **VACATED** and **REMANDED** for proceedings not inconsistent with this Opinion.