J.A13015/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS J. HYLAND, | : | |
| | : | No. 2104 EDA 2013 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered July 8, 2013
In the Court of Common Pleas of Montgomery County
No(s).: CP-46-SA-0000145-2013

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED SEPTEMBER 10, 2014**

Appellant, Thomas J. Hyland, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, ordering him to pay a fine of $369.45 for a summary conviction of defiant trespass.[1] Appellant raises five issues on appeal, four of which challenge the sufficiency of the evidence and one which challenges the trial court's preclusion of his proffered expert testimony. We affirm.

Appellant's conviction arises from allegations that on August 7 and 18 2012, he was issued "eviction notices" prohibiting him from entering the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3503(b).

Valley Forge Casino Resort ("Casino") for being an "advantage player"[2] and "undesirable." *See* Exs. C-1, D-5. Two months later, on October 15, 2012, Appellant returned to the Casino, at which time a security supervisor detained him and called the Pennsylvania State Police. Appellant left the Casino after talking with the trooper. The trooper subsequently mailed him a citation charging him with defiant trespass.

The magisterial district court found Appellant guilty. Appellant filed a timely appeal for a trial *de novo* in the Court of Common Pleas, which was held on June 20, 2013. On July 8, 2013, the trial court found him guilty of defiant trespass and imposed a fine. This appeal followed.[3]

Appellant presents five questions for review, which we have reordered as follows:

> Did the trial court err in convicting [Appellant] of defiant trespass where the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] knew he was not licensed to be at the subject property?
>
> Did the trial court err in convicting [Appellant] of defiant trespass where the subject property is open to the public and [Appellant] complied with all lawful conditions?
>
> Under the circumstances presented, did [Appellant's] conviction of defiant trespass violate the Commonwealth's

---

[2] The Commonwealth did not present evidence defining an "advantage player." Appellant described himself as a professional, "proficient" or "skilled" blackjack player. *See* N.T., 6/20/13, at 72.

[3] Appellant complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

> strong policy of protecting the public from casino gaming abuses?
>
> Did the trial court err in convicting [Appellant] of defiant trespass where he was returning to the subject property for the lawful purpose of retrieving funds lawfully due to him under Pennsylvania law?
>
> Did the trial court err in convicting the [Appellant] of defiant trespass where it improperly excluded [Appellant's] proffered expert testimony and the exclusion was highly prejudicial?

Appellant's Brief at 4.

We summarize Appellant's sufficiency arguments as follows. He first claims that the Commonwealth failed to prove that he knew that he was not licensed or privileged to enter the Casino because he (1) did not receive copies of the eviction notices, (2) was in possession of his membership card to the Casino, and (3) was not placed on the list of excluded persons maintained by the Pennsylvania Gaming Control Board ("PGCB").[4] Second, he argues that the Commonwealth failed to disprove his affirmative defense that the Casino was open to the public and that he abided by all lawful conditions for accessing the Casino. In support of this argument, Appellant asserts that (1) the Casino violated public policy by evicting him for "advantage playing," (2) claims that he returned to the Casino merely to redeem his chips, and (3) suggests that the Casino retaliated against him for

---

[4] **See** 4 Pa.C.S. § 1514.

previously reporting the Casino's failure to honor his chips.    No relief is due.

The standards governing our review of the sufficiency of the evidence are as follows:

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether viewing the evidence in the light most favorable to the verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.  The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  However, any questions or doubts are to be resolved by the factfinder, unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the circumstances. The trier of fact is free to believe all, part or none of the evidence.

***Commonwealth v. Johnson***, 818 A.2d 514, 517 (citations omitted).

The criminal trespass statute provides, in relevant part:

> **(b) Defiant trespasser.—**
>
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> (i) actual communication to the actor[.]
>
> *    *    *
>
> **(c) Defenses.—**It is a defense to prosecution under this section that:
>
> *    *    *

> > (2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises[.]

18 Pa.C.S. § 3503(b)(1)(i), (c)(2).

As to the sufficiency of the evidence to prove a violation under subsection (b)(1)(i), our review reveals that the trial court, sitting as the finder of fact in the trial *de novo*, credited evidence that a security supervisor at the Casino, Manar Makhoul, presented eviction notices to Appellant on August 7 and August 18, 2012. Those eviction notices stated, "[Y]ou must leave the premises and never return," and contained the warning, "If you . . . return at any time, you will be arrested for trespassing." Exs. C-1, D-5. Although Appellant did not sign the notices, Makhoul testified that on August 7th, he "advised [Appellant] that he w[ould] be permanently evicted from the property and if he returned he could be cited for criminal trespass." N.T. at 8. Makhoul stated that he spoke with Appellant on August 18th and verbally reminded him of his prior eviction. *Id.* at 9.

Appellant, testifying in his own defense, denied receiving the notices. *Id.* at 61, 64. He acknowledged that he deliberately tried not to interact with casino personnel because of the harassment he suffered as a skilled blackjack player. *Id.* at 65. He conceded, however, that when he was leaving the Casino on August 18th, he heard security personnel tell him,

"Don't come back or you're not allowed here, we don't want you here, things like that." *Id.* at 64.

We thus conclude there was sufficient evidence for the trial court to find that adequate notice against trespass was given by actual communication to Appellant. *See* 18 Pa.C.S. § 3503(b)(1)(i). The court was free to find Makhoul's testimony credible. *Johnson*, 818 A.2d at 517. Moreover, based upon Appellant's own testimony, there was sufficient evidence for the trial court to conclude that Appellant entered the Casino on October 15, 2012, knowing that he was evicted, even though he remained in possession of his membership card and even if he did not sign or receive copies of the Casino's written eviction notices. *See* N.T. at 64-65. Therefore, Appellant's first sufficiency challenge fails.

We next consider Appellant's arguments that the evidence was insufficient to rebut his affirmative defenses under Subsection 3503(c)(2). Appellant asserts that his conviction must be vacated under the principles set forth in *Commonwealth v. Tate*, 432 A.2d 1382 (Pa. 1981). In support, Appellant relies on *Uston v. Resorts Int'l Hotel, Inc.*, 445 A.2d 370 (N.J. 1982), to argue that the Casino's issuance of the evictions was unlawful and against public policy. Appellant suggests that we adopt New Jersey law, limit a casino's ability to exclude "card counters," and hold that his eviction for advantage playing constituted an improper condition on his

right to access the Casino. For the reasons that follow, we conclude no relief is due.

In *Tate*, the Pennsylvania Supreme Court considered whether a private college properly excluded non-student protestors from distributing leaflets before, during, and after a symposium held at the college's student union building. *Tate*, 432 A.2d at 1384-85. The protestors were warned not to distribute the leaflets without a permit, but the college subsequently denied them a permit. *Id.* at 1385. At the end of the symposium, the protesters continued to distribute leaflets outside the entrance of the student union building and were arrested and convicted of defiant trespass. *Id.*

The *Tate* Court, when discussing the affirmative defense to defiant trespass, concluded the campus was open to the public. *Id.* at 1386. The Court further determined that although the college maintained a permit requirement for distributing materials, there were no indications "what standards, if any," governed the issuance or denial of a permit. *Id.* at 1387. The Court concluded that the evidence presented at trial indicated that "the college believed itself entitled to exercise its discretion arbitrarily." *Id.* (footnote omitted). The Court thus framed the issue in that appeal as "whether the college's standardless permit requirement constitutes a lawful condition with which [the protestors] were obligated to comply or otherwise face prosecution and conviction as defiant trespassers." *Id.* (footnote omitted).

In reversing the convictions, the **Tate** Court concluded that the controversy surrounding the symposium and its speakers implicated the protestors' fundamental rights of political speech. **Id.** at 1390. The **Tate** Court engaged in a balancing of "the college's right to possess and protect its property against [the protestors'] rights of expression in light of the compatibility of that expression with the 'activity of (the) particular place at (the) particular time.'" **Id.** Because the college failed to articulate any standards for permitting or excluding the exercise of those constitutional rights, the Court held that the college did not impose "lawful conditions" on the protesters' access to the campus. **Id.** at 1391. Accordingly, the Court vacated the convictions for defiant trespass. **Id.**

In **Uston**, the New Jersey Supreme Court considered whether a casino retained its authority to exclude a patron for employing a "strategy of card counting" when playing blackjack. **Uston**, 445 A.2d at 371. In that case, the New Jersey Casino Control Commission ("Commission") implemented a new rule for reshuffling cards that "dramatically improved the card counter's odds." **Id.** Thereafter, a casino obtained preliminary approval from the Commission to ban card counters. **Id.** at 372. Immediately after receiving the Commission's preliminary approval, the casino banned the plaintiff because he was a professional card counter, and the Commission upheld the casino's ban. **Id.**

The New Jersey intermediate appellate court reversed the Commission's decision, and the New Jersey Supreme Court affirmed. *Id.* The New Jersey Supreme Court determined the New Jersey Casino Control Act (the "New Jersey Act"), N.J.S.A. 5:12-1 to -233, abrogated "[a]ny common law right [the casino may have had] to exclude [the plaintiff]" for being a card counter. *Id.* at 372-73 (citing, *inter alia*, N.J.S.A. 5:12-70 (requiring Commission to establish rules of authorized games and odds), 5:12-100(e) (requiring all gaming be conducted pursuant to Commission's rules)). The Court held, "The Commission alone has the authority to exclude patrons based upon their strategies for playing licensed casino games." *Id.* at 372.

With respect to the plaintiff, the *Uston* Court opined that his gaming was conducted according to the rules promulgated by the Commission and he merely had a "comparative advantage" under the Commission's blackjack rules. *Id.* at 373. Permitting a casino to change the Commission's rules would "subvert the important policy of ensuring the 'credibility and integrity of the regulatory process and of casino operations.'" *Id.* Thus, the Court found that the casino "has no right to exclude [the plaintiff] on the grounds that he successfully plays the game under existing rules." *Id.*

The *Uston* Court, in *dicta*, observed that the casino's common law right to exclude patrons was not absolute and opined "that the common law right to exclude is substantially limited by a competing common law right of

reasonable access to public places." *Id.* at 372. The Court asserted that "when property owners open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably[, but have] a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises." *Id.* at 375. Nevertheless, the Court did not suggest that a ban on advantage playing was illegitimate and unreasonable. *Id.* Rather, it "expressly decline[d] to decide whether the Casino Control Act empowers the Commission to exclude card counters." *Id.*

Instantly, the Commonwealth and the trial court suggest Appellant's affirmative defense under 18 Pa.C.S. § 3503(c)(2) must fail because the Casino was not open to the public. However, the trial evidence only established that access to the gaming floor of the Casino was limited and secured by turnstiles through which an individual passed by swiping a membership or access card. *See* N.T. at 5-6 (describing "casino" as private, but noting Casino had dining and hotel accommodations), 8-9 (noting Appellant was banned from entire "casino," hotel, convention center, and "everything attached to it"). Moreover, although Appellant attempted to enter the gaming floor on October 15, 2012, he was stopped by the turnstiles and went to a service desk outside the gaming floor. N.T. at 68, 69. No evidence was produced to show that areas outside the gaming floor were limited access or otherwise not open to the public. Thus, his conviction

for defiant trespass was based on his presence in an area outside the restricted access gaming floor. Therefore, we conclude that Appellant was in an area open to the public under Subsection 3503(c)(2). Thus, we must review his arguments that the evictions by the Casino constituted an unlawful condition on his access.[5]

Appellant correctly observes that the New Jersey Act and Pennsylvania's Race Horse Development and Gaming Act (the "Pennsylvania Act"), 4 Pa.C.S. §§ 1101–1904, announced policies of protecting the public when authorizing and regulating table games. **See** 4 Pa.C.S. § 1102(1) (stating, "The primary objective of this part to which all other objectives and purposes are secondary is to protect the public through the regulation and policing of all activities involving gaming and practices that continue to be unlawful"); N.J.S.A. 5:12-1(6) (stating, "An integral and essential element of the regulation and control of such casino facilities by the State rests in the public confidence and trust in the credibility and integrity of the regulatory process and of casino operations."). Moreover, the Pennsylvania Act contains other provisions that are similar to those in the New Jersey Act. **See e.g.** 4 Pa.C.S. § 1514 (requiring establishment of list of person to be excluded or ejected from any casino); N.J.S.A. 5:12-71 (same). It is

---

[5] We are mindful, however, that "[m]erely inviting the public for purposes of engaging in commerce does not convert a privately owned shopping center into a public or quasi-public forum." **W. Pa. Socialist Workers 1982 Campaign v. Conn. Gen. Life Ins. Co.**, 485 A.2d 1, 8 (Pa. Super. 1984) (citations omitted).

axiomatic, however, that the decisions of our sister states are not binding on this Court, but may be considered persuasive authority. ***Commercial Nat'l Bank of Pa. v. Seubert & Assocs.***, ***Inc.,*** 807 A.2d 297, 303 (Pa. Super. 2002).

With respect to the Pennsylvania Act, ***Uston*** is not persuasive authority. The Pennsylvania Act and the New Jersey Act analyzed by ***Uston***, are distinguishable. Former N.J.S.A. 5:12-100(e),[6] which governed the conduct of games by a casino, provided:

> All gaming shall be conducted according to rules promulgated by the commission. All wagers and pay-offs of winning wagers at table games shall be made according to rules promulgated by the commission, which shall establish such minimum wagers and **other limitations as may be necessary to assure the vitality of casino operations and fair odds to and maximum participation by casino patrons**[.]

***See Uston***, 445 A.2d at 372-73 (quoting former N.J.S.A. 5:12-100(e)) (emphasis added). The "other limitations" language in former N.J.S.A. 5:12-100(e) was critical to the ***Uston*** Court's determination that the Commission, and not a casino, possessed the authority to exclude card counters. ***See id.*** at 372-73, 376.

The Pennsylvania Act vests the PGCB with "general and sole regulatory authority of gaming" and the "sole regulatory authority over every aspect of the authorization, operation and play of . . . table games." 4 Pa.C.S. §

---

[6] N.J.S.A. 5:12-100(e) has since been amended. ***See*** N.J.S.A. 5:12-100(e) (eff. Feb. 26, 2013).

1202(1). The PGCB is directed to establish "standards and rules to govern the conduct of table games and the systems of wagering associated with table games[.]" 4 Pa.C.S. § 13A02(2). The regulatory authority vested in the PGCB does not contain a similar "other limitations" provision on which the **Uston** Court abrogated a casino's right to exclude a card counter. **See id.** Similarly, the provisions governing the conduct of table gaming by a licensee do not contain an "other limitations" provision. **See** 4 Pa.C.S. §§ 13A21-13A22, 13A24.

We further note that no court outside New Jersey has relied on **Uston** to abrogate a casino's right to expel an advantage player. **See Donovan v. Grand Victoria Casino & Resort, L.P.**, 934 N.E.2d 1111, 1117-18 (Ind. 2010) (holding Indiana riverboat casino may exclude card counter); **Brooks v. Chicago Downs Ass'n Inc.**, 791 F.2d 512, 517 (7th Cir. 1986) (concluding Illinois racetrack retained common law right to prohibit members of Pennsylvania partnership of expert handicappers from placing bets). Moreover, aside from *dicta* in **Uston**, our review reveals no authority suggesting that gambling generally or advantage playing specifically gives rise to a protected interest. **See Doug Grant, Inc. v. Greate Bay Casino Corp.**, 232 F.3d 173, 189-90 (3d Cir. 2000) (discussing equal protection claims regarding countermeasures promulgated after **Uston** to limit advantages of card counting and noting, *inter alia*,

"appellants do not have a constitutionally protected property interest in the opportunity to gamble").

In light of the foregoing, we discern no basis to reach the conclusion urged by Appellant, namely, that we follow *Uston* and hold that the Casino had no right to exclude him as a card counter under the Pennsylvania Act. Therefore, Appellant's argument that the Casino imposed an unlawful condition on his ability to access the Casino warrants no relief.

With respect to Appellant's final sufficiency arguments, namely that he returned to the Casino to redeem his chips and the Casino was retaliating against him for reporting the Casino's failure to honor his chips, we are under no obligation to review the record in a light most favorable to Appellant. *See Johnson*, 818 A.2d at 517. Although Appellant testified that he returned to the Casino to redeem his chips and that he previously filed reports with a PGCB officer, it was within the province of the trial court to discredit that evidence. *See id.*

Lastly, Appellant challenges the evidentiary ruling of the trial court that precluded his witness, Michael Riggs, from testifying as an expert. Appellant proffered that Riggs was a former member of the New Jersey Division of Gaming Enforcement, was familiar with how the New Jersey Act, "which [was] the basis of the" Pennsylvania Act, was enforced, and would opine that "skilled blackjack players are permitted to gamble and have full access to casino tables." N.T. at 36. When asked by the court what Riggs's

knowledge of Pennsylvania gaming was, Appellant proffered that Riggs was a licensed private investigator in Pennsylvania. *Id.* at 36-37. The Commonwealth objected on relevance grounds, and the trial court sustained the objection. *Id.* at 39-40.

Appellant presently argues that the trial court erred in refusing to qualify Riggs as an expert. Appellant asserts that the court's ruling was "contrary to [Pa.R.E.] 702" and the liberal standards governing the qualification of experts. Appellant's Brief at 31. Moreover, Appellant contends that the court erred in precluding Riggs's expert testimony "based solely on the proffer and without allowing defense counsel the opportunity to qualify him." *Id.* We discern no basis for granting relief.

> Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law.
>
> A court may allow "scientific, technical or other specialized knowledge beyond that possessed by a layperson [if it] will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." Pa.R.E. 702. However, relevant "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

*Commonwealth v. Venutra*, 975 A.2d 1128, 1140 (Pa. Super. 2009) (some citations omitted).

Appellant's present argument regarding Riggs's qualifications to discuss the treatment of "advantage players" under New Jersey law suffers from the same fate as his sufficiency argument. As we have concluded above, *Uston* is not persuasive authority regarding the treatment of advantage players. Thus, Appellant's proffer of Riggs to show how advantage players were treated in New Jersey was not relevant. Moreover, as in the trial court, Appellant provides this Court with no basis to conclude that Riggs possessed any familiarity the treatment of advantage players in Pennsylvania. Accordingly, we discern no basis to disturb the trial court's ruling that precluded Riggs from testifying as an expert based on his expertise in New Jersey.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2014