A03A1623. LAMB v. FIRST UNION BROKERAGE SERVICES, INC. et al.

(589 SE2d 300)

ADAMS, Judge.

In this appeal, T. Gordon Lamb challenges the denial of his motion for summary judgment and the grant of the same to First Union Brokerage Services, Inc. (First Union Brokerage) and First Union National Bank (First Union). Lamb contends that the trial court overlooked the law applicable to revocable agencies and failed to consider the legal duties that an agent owes an owner of a brokerage account.

This case resulted from two garnishment proceedings. On June 29, 2000, First Union was served with a summons of garnishment in *PRL USA Holdings, Inc. f/k/a Polo Ralph Lauren Corporation v. Bang Sung Kang a/k/a Ki Taek Kang, First Union National Bank, Garnishee.* About two weeks later, on July 12, 2000, First Union Brokerage was likewise served with a summons of garnishment in *PRL USA Holdings, Inc. f/k/a Polo Ralph Lauren Corporation v. Bang Sung Kang a/k/a Ki Taek Kang, First Union Brokerage Services, Inc., Garnishee.* According to its garnishment affidavit, PRL USA Holdings, Inc. (PRL) had obtained a judgment against Kang in federal district court and recorded a writ of execution for $1,302,477.94 in the general execution docket and lien docket in Gwinnett County. PRL sought to recover its judgment from Kang.

Kang testified that after receiving a copy of the first garnishment, he had met the next day with Don Purviance, a First Union vice president. After learning from Purviance that First Union and First Union Brokerage were separate corporate entities, "I requested that my brokerage accounts, which had not been garnished, be immediately cashed out or closed. I also advised him that First Union Brokerage Services, Inc. was not authorized to act in any further capacity as my broker agent." According to Kang, when Purviance telephoned First Union Brokerage, Purviance was advised

that they would not honor my instructions on the two brokerage accounts, as they indicated that there was a loan for

which one of the accounts was being held as collateral and that the other account was used as collateral or security for any CAP account overdrafts and thereby might be considered to be connected to a part of the CAP account.[1]

On July 17, 2000, Kang filed a traverse in the second garnishment action, making the stark assertion that PRL's garnishment affidavit was "untrue or legally insufficient." On January 2, 2001, the trial court denied Kang's traverse and directed First Union and First Union Brokerage to pay the funds subject to the consolidated garnishment actions into the registry of the court. That same day, the court entered a consent order directing the disbursement of the funds in two separate payments of $112,420.12 each.

Thereafter, Kang filed a motion to vacate/set aside that order. Kang argued that the funds in his brokerage accounts were not subject to the second garnishment action because after he terminated First Union Brokerage's authority over his accounts, it was no longer his agent. He claimed that the brokerage "acted improperly and without authority when it refused to return to Defendant his securities/ assets." In entering an order on March 12, 2002, denying Kang's motion to vacate/set aside, the trial court implicitly rejected these arguments. We find nothing in the record to indicate that the decision in the consolidated garnishment action was ever appealed.

On June 23, 2002, Kang assigned all of his rights, causes of action, or claims of any nature that he had against First Union Brokerage and First Union to Lamb. As the assignee, Lamb filed the underlying suit against First Union Brokerage and First Union for allegedly wrongfully seizing and disbursing funds from Kang's accounts. The gravamen of Lamb's lawsuit was that by failing to timely honor Kang's valid request to close his brokerage accounts, First Union Brokerage caused the funds in Kang's accounts to be subject to garnishment by PRL. Lamb claimed that the brokerage's delay in releasing Kang's funds had afforded PRL sufficient time to file the second garnishment, thus enabling PRL to seize the funds in Kang's brokerage accounts.

To support summary adjudication, First Union and First Union Brokerage offered copies of Kang's banking/investment records and the testimony of a senior compliance officer, Marilyn L. Brucki with Wachovia Securities, First Union Brokerage's successor-in-interest. Brucki explained that Kang's brokerage account and his bank account were linked together. Brucki testified that Kang had a CAP account that consisted of a brokerage account at First Union Broker-

---

[1] No definition of a "CAP account" appears in the record.

age and a bank account at First Union with the funds in the broker-age account securing any margin debt in the CAP account on the bank side. Brucki testified that "[t]he funds in the brokerage side of the CAP account were used as collateral for any overdrafts in the bank side of the account" and that "in early July 2000, the brokerage account secured a margin debt of approximately $12,000.00." Brucki testified that Kang also had a brokerage account that was a "loan account" that "could not be closed without approval from the loan officer facilitating the account." Brucki testified that the loan officer facilitating Kang's account did not give approval to release the funds in Kang's account "until after the July 12, 2000 Summons of Garnishment was issued."

Lamb submitted his own affidavit in which he recounted accompanying Kang to First Union when Kang had attempted to close his brokerage accounts. Lamb testified that Purviance told Kang that First Union Brokerage "would not close the accounts until they had discussed the matter with their counsel, as they were concerned that they might be subject to the Garnishment Action on First Union National Bank." Lamb testified that despite making "numerous attempts" to have the brokerage accounts liquidated and released to Kang, First Union Brokerage withheld the funds from Kang, thereby subjecting them to the second garnishment action.

In finding First Union and First Union Brokerage entitled to judgment as a matter of law, the trial court determined that no genuine issues of material fact remained for resolution. Lamb appeals.

1. Lamb contends that the trial court erred in denying his motion for summary judgment. He claims that as a separate corporate entity from First Union, First Union Brokerage was not subject to the garnishment action filed against First Union, and that it acted improperly in retaining Kang's funds. He contends that Kang had an absolute right to close his accounts with First Union Brokerage and that by violating Kang's instructions, First Union Brokerage, as Kang's agent, became liable for the consequences of breaching its fiduciary duty to Kang. Lamb argues that even assuming that Kang had a margin debt of approximately $12,000, all funds in excess of that amount should have been released to Kang. Lamb asserts that Kang's reasons for closing his brokerage accounts were not a valid concern of the appellees. Lamb contends that:

> the actions of the Appellees in refusing to release funds until receipt of the second Garnishment action clearly demonstrate that the Appellees had decided that Kang should not be allowed the opportunity to hide his assets from his Judgment creditor and that they would retain same until receiv-

ing a Garnishment against the proper entity from said Judgment creditor.

We need not, however, consider the propriety of Lamb's argument that Kang was improperly deprived of the opportunity to hide assets from his judgment creditor. As the assignee of Kang's rights, Lamb could have no rights greater than Kang. See *Algernon Blair, Inc. v. Nat. Surety Corp.*, 222 Ga. 672, 673 (151 SE2d 724) (1966), superseded by statute on separate grounds, *Golsen v. Magbee Lumber Co.*, 126 Ga. App. 119 (190 SE2d 104) (1972). Kang, of course, had a right to appeal the judgment in the garnishment action. See, e.g., *Wallace v. Saks Fifth Ave., Atlanta,* 180 Ga. App. 679 (350 SE2d 308) (1986). With an exception not applicable here, appeals from garnishment judgments must be made by the filing of a timely application for discretionary appeal. *Maloy v. Ewing,* 226 Ga. App. 490, 491 (486 SE2d 708) (1997). Under OCGA § 5-6-35 (a) (4), Kang had only 30 days from March 12, 2002, the date of the entry of the order, from which to file an application for discretionary appeal. Apparently, either Kang failed to do so or Kang's application for appeal was denied. In either event, since Kang cannot now appeal that judgment, neither can Lamb. See *Easley, McCaleb & Stallings v. Gateway Mgmt.*, 191 Ga. App. 588 (382 SE2d 373) (1989).

Even had Lamb's claims not been procedurally barred by Kang's failure to comply with the terms of OCGA § 5-6-35, his claims are otherwise foreclosed for an additional reason. The doctrine of res judicata foreclosed Lamb's cause of action. Under that doctrine,

[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

OCGA § 9-12-40. When several requirements are met, the prior action operates as a bar to a subsequent action: "[t]he first action must have involved an adjudication by a court of competent jurisdiction; the two actions must have an identity of parties and subject matter; and the party against whom the doctrine of res judicata is raised must have had a full and fair opportunity to litigate the issues in the first action." (Citations omitted.) *Grant v. Franklin,* 244 Ga. App. 370, 371 (534 SE2d 584) (2000).

Here, those requirements were met when the assignor, Kang, litigated or could have litigated the same issues during the consolidated garnishment proceeding. See OCGA § 18-4-93. As the debtor in

the garnishment action, Kang was required to assert any claim superior to PRL to the funds held by the garnishee. See *Terrell v. Fuller*, 160 Ga. App. 56, 58 (286 SE2d 50) (1981); OCGA § 18-4-95. When the trial court denied Kang's traverse and his motion to dismiss, it implicitly rejected Kang's challenge to the legality of First Union Brokerage's delay in disbursing the funds in his brokerage accounts to him. Then, in denying Kang's motion to vacate/set aside the garnishment judgment, the trial court again decided Kang's claim to the funds in the accounts adversely to him. Even assuming that the trial court did not rule on Kang's legal right to close his brokerage accounts before the second garnishment action as Lamb argues, Lamb cannot raise the issue now. Res judicata bars all issues which could have been litigated in the prior action. *Garrett v. Life Ins. Co. of Ga.*, 221 Ga. App. 315, 317-318 (1) (471 SE2d 262) (1996).

2. Notwithstanding Lamb's argument to the contrary, the trial court did not err in awarding summary judgment.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 22, 2003 — 

T. Gordon Lamb, *pro se.*

*Troutman Sanders, Michael E. Johnson, Michelle Kahoiwai*, for appellees.