**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0206. VININGS BANK v. BRASFIELD & GORRIE, LLC

MILLER, Judge.

This case arises from a defaulted $1.4 million business loan that Vinings Bank ("the Bank") made to Wagener Enterprises, Inc. ("WEI"). As partial collateral for the $1.4 million loan, WEI granted the Bank a security interest in all of its accounts and accounts receivable, including WEI's contract to provide drywall services work for general contractor Brasfield & Gorrie ("B&G") on multiple construction projects. After WEI defaulted on the loan, the Bank filed suit against B&G, seeking to collect on WEI's accounts receivable and alleging conversion. B&G filed a counterclaim for conversion, and the parties subsequently filed cross-motions for summary judgment. The Bank appeals, contending that the trial erred in (1) denying its motion for summary judgment in its action to recover money from B&G, and in granting partial

summary judgment to B&G; (2) denying its motion for summary judgment on its conversion claim; and (3) denying its motion for summary judgment on B&G's counterclaim for conversion. Discerning no error, we affirm.

It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence. Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case.

(Citations omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 250-251 (510 SE2d 541) (1998).

So viewed, the evidence shows that the Bank made the loan to WEI in August 2009. As collateral, WEI granted the Bank a security interest in "all of [WEI's] accounts, accounts receivable, instruments, and other receivables of any kind or nature, whether or not evidenced by any instrument or chattel paper, and whether earned or unearned." The security interest also obligated WEI to deliver accounts that

2

were "free and clear of any lien." That same month, the Bank filed a UCC-1 Financing Statement to perfect its security interest in WEI's accounts.

In 2010 and 2011, WEI entered into a dozen subcontracts ("the subcontracts") with B&G, each related to a different construction project. The record shows that WEI performed pursuant to these contracts, submitted invoices on the projects throughout 2010 and 2011, and was regularly paid by B&G for its work. Before WEI went out of business, some of the construction projects were completed, and WEI's final bills had been submitted to B&G and paid. Other projects were not yet complete. In September 2011, B&G learned that WEI was going out of business and abandoning its work on unfinished construction projects.

After WEI defaulted on the loan in August 2011, the Bank froze WEI's deposit accounts and applied the funds in those accounts toward the principal due on the loan. According to the Bank, B&G owed WEI approximately $700,000 for work that had been completed and invoiced prior to the end of September 2011. In October 2011, the Bank sent notice to B&G that it had an interest in WEI's accounts and accounts receivables. B&G responded that some of the funds in WEI's accounts were funds paid by B&G, which may be due to some of WEI's suppliers and subcontractors, and B&G could not determine any amount due and payable to WEI until after B&G

3

arranged for completion of the abandoned projects and after WEI's subcontractors and suppliers were paid.

Thereafter, acting pursuant to the express terms of the subcontracts, B&G made no further payments to WEI until it could determine the costs to complete WEI's work and pay WEI's laborers, subcontractors, and suppliers. B&G also stopped payment on its outstanding checks to WEI.

In September 2012, the Bank filed suit against B&G, alleging that B&G owed money to WEI and thus, under the security deed, owed money to the Bank. B&G filed a counterclaim for conversion of funds in WEI's frozen accounts, which were due to WEI's subcontractors and suppliers.

In granting partial summary judgment to B&G, the trial court found, as a matter of law, that WEI, and therefore the Bank, was not entitled to payment under the subcontracts until WEI's subcontractors and suppliers were paid and until the completion costs of finishing the work abandoned by WEI were applied to the value of the completed work. The trial court denied the Bank's motion for summary judgment, finding an issue of fact regarding whether WEI had any right to further payments (i.e. whether any accounts receivables existed) from B&G.

4

1. The Bank contends that the trial court erred in denying its motion for summary judgment and in granting partial summary judgment to B&G on the issue of the Bank's security interest. We disagree.

Under Georgia's Uniform Commercial Code, a security interest is enforceable against a debtor and third parties with respect to collateral, only if "the debtor has rights in the collateral." OCGA § 11-9-203 (b) (2). "A security interest can attach only to the extent of the debtor's interest." (Citations omitted.) *Southwest Ga. Production Credit Assn. v. James*, 180 Ga. App. 795, 796 (350 SE2d 786) (1986). An assignee's right to payment, therefore, is no greater than the assignor's right to payment, and an assignee's rights are subject to any defenses against the assignor. OCGA § 11-9-404 (a); *Lamb v. First Union Brokerage Svcs., Inc.*, 263 Ga. App. 733, 736 (1) (589 SE2d 300) (2003). To determine the assignor's right to payment, we must look to the contracts between B&G and WEI.

In Georgia,

> where the terms of a written contract are clear and unambiguous, the court must look to the contract to find the intention of the parties—not to matters outside the contract. It is also well established that a contract should be construed by examining the entire agreement, not by speculating about isolated words, clauses or provisions thereof. Further,

5

the construction of a contract, unambiguous on its face, is a matter of law for the court, even though a party to the contract contends it should be construed differently.

(Citations omitted.) *Techwerks, Inc. v. Retail Technologies Corp.*, 235 Ga. App. 144, 145 (509 SE2d 84) (1998). Contract disputes are particularly well suited for summary adjudication because the construction of contracts is ordinarily a matter of law for the court. See, e.g., *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995).

The portions of the subcontracts relevant here are identical. The subcontracts all required B&G to pay WEI "for the satisfactory performance and completion of the Work under this [s]ubcontract the sum set forth above as the [p]rice, subject to additions and deductions as herein provided." Regular progress payments were to be made as B&G received progress payments from the projects' owners and final payment was to be made upon completion of the projects. The subcontracts entitled B&G to withhold or deduct from any progress or final payment all amounts necessary to protect B&G if WEI failed to complete the work or failed to pay its subcontractors and suppliers. The subcontracts expressly provided that "the payments made by [B&G] will be held in trust by [WEI] to be applied first to the payment of laborers, suppliers, subcontractors and others responsible for the [work]." Final payment was

only due under the subcontracts upon completion of the work, and evidence that there were no outstanding debts, claims, obligations, or liens for labor, services, or materials.

Under the clear language of the subcontracts, WEI was not entitled to final payment until all the work had been performed and until payment was made to laborers and suppliers. As an assignee of WEI, the Bank has no greater right to payment than WEI and took the assignment subject to any defenses or claims that could be asserted against WEI. OCGA § 11-9-404 (a); *Lamb*, supra, 263 Ga. App. at 736 (1). Moreover, under Georgia law, contractors, including subcontractors like WEI and master contractors like B&G, are required to pay their subcontractors and suppliers, who are otherwise entitled to a lien on the real estate or property on which they work. OCGA § 44-14-361 (a) (2).

Furthermore, to the extent that WEI's subcontractors or suppliers had filed or had the right to file valid liens, Georgia law may impose a constructive trust on the funds in the subcontractor's accounts. See *In re American Bldg. Consultants, Inc.*, 138 Bankr. 1015, 1017 (N. D. Ga. 1992). Here, the security interest itself provides that the WEI's accounts must be "free and clear of any lien." Therefore, WEI was not due any money until all liens or possible liens had been satisfied.

Although the Bank contends that under *Continental American Life Ins. v. Griffin*, 251 Ga. 412 (302 SE2d 285) (1983), its security interest in WEI's accounts receivable takes priority over B&G's contractual right of "set-off," the trial court properly found that the payments to suppliers and subcontractors were distinguishable from the payments deemed to be set-offs in *Continental American Life*. A secured creditor has priority over any unsecured creditors, including any creditors' right of set-off. Id. at 414 (2).

> Under Georgia law, a set-off is a counter-demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic or independent of the plaintiff's cause of action. A set-off allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff.

(Footnotes omitted.) *Automated Print, Inc. v. Edgar*, 288 Ga. App. 326, 330 (2) (654 SE2d 413) (2007).

Here, any amounts B&G withheld or subtracted from WEI's invoices in order to complete a project and pay WEI's suppliers and subcontractors, at least to the extent that the money was applied to payment under the same contract, arose from the same transaction and, therefore, are not set-offs. *Automated Print,* supra, 288 Ga.at 330 (2). Accordingly, the trial court did not err in granting partial summary judgment

8

to B&G on the very limited issue of priority of payment, i.e., that the Bank, as an assignee of WEI, was not entitled to payment under the subcontracts until WEI's subcontractors and suppliers were paid and until the costs for completing WEI's subcontracts were paid.

However, the reasonableness of any payments and costs due under each contract and, what funds, if any, are due to WEI and thus the Bank, are properly a question for the jury. Hence, the trial court did not err in denying the Bank's motion for summary judgment for this same reason. To the extent that the jury determines that B&G withheld monies payable on one contract to pay the completion costs or pay the suppliers or subcontractors on a different contract, the Bank, as a secured creditor, may have priority over B&G's right to the funds. *Continental*, supra, 251 Ga. at 414.

2. The Bank also argues that the trial court erred in denying its motion for summary judgment as to its claim for conversion. We disagree.

"A secured creditor has a right of action for conversion if property subject to its security interest is disposed of without the creditor's authorization. The elements of such a claim include the showing of a valid security interest in the debtor's property, disposition of that property, absence of the creditor's authorization for the

9

disposition, and resulting damage to the creditor." *William Goldberg & Co., Inc. v. Cohen*, 219 Ga. App. 628, 640 (7) (a) (466 SE2d 872) (1995).

Although the Bank contends that the elements of conversion are undisputed, that is not the case. As discussed above, there remains an issue of fact as to what monies, if any, were owed to WEI from B&G under each contract. Until that is determined, it is not known whether there is any property that was disposed of by B&G that was properly the subject of the Bank's security interest. *William Goldberg*, supra, 219 Ga. App. at (7) (a). For this reason, the court did not err in denying the Bank's motion for summary judgment on its conversion claim.

3. The Bank also contends that the trial court erred in denying the Bank's motion for summary judgment on B&G's counterclaim for conversion. We discern no error.

B&G's counterclaim against the Bank for conversion is based on the Bank's actions in freezing WEI's deposit accounts and subsequently applying the funds in those accounts toward the principal due from WEI on the business loan. B&G contended that monies in the frozen accounts were subject to a constructive trust under OCGA § 16-8-15 for payment of WEI's subcontractors and suppliers. The

10

Bank moved for summary judgment on B&G's counterclaim, arguing that the frozen accounts were not designated as trust accounts and B&G failed to produce any evidence that it had any ownership interest in the funds held in those accounts. The trial court denied the Bank's motion for summary judgment without any specific discussion of B&G's counterclaim.[1]

"[A] constructive trust is a remedy created by a court in equity to prevent unjust enrichment. Such a trust is impressed upon property when it is against equity that the person holding title to the property be allowed to enjoy the beneficial interest in the property." (Citations omitted.) *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138 (2) (508 SE2d 646) (1998). OCGA § 16-8-15 does not, in and of itself, provide authority for the creation of a constructive trust and cannot provide the basis for a civil action for conversion of funds. *Doyle Dickerson Co. v. Durden*, 218 Ga. App. 426, 427 (461 SE2d 902) (1995). As set forth above in Division 1, to the extent that subcontractors or suppliers had filed or had the right to file valid liens, Georgia law

[1]B&G contends that the trial court did not rule on this issue and therefore it is not properly before this Court for review. *Georgia Dept. of Natural Resources v. Coweta County*, 261 Ga. 484 (405 SE2d 470) (1991). Here, although the trial court did not make any findings of fact or conclusions of law regarding the Bank's motion for summary judgment on B&G's counterclaim, it did deny the Bank's motion in its entirety.

may impose a constructive trust on the funds in the subcontractor's accounts. See *In re American Bldg. Consultants*, supra, 138 Bankr. at 1017.

On or about September 28, 2011, the Bank froze all of WEI's deposit accounts when WEI defaulted on its loan. In the months leading up to and throughout September 2011, WEI was still in operation, submitting invoices to B&G, including invoices for labor and supplies. It is not clear to what extent WEI's subcontractors and suppliers have been paid or whether any invoices remain unpaid. Consequently, there exists an issue of material fact as to whether, at the time the Bank froze the accounts, WEI's subcontractors or suppliers had filed liens or still had the right to file valid liens for unpaid work and supplies. For this reason, the court did not err in denying the Bank's motion for summary judgment on B&G's conversion counterclaim and we affirm the judgment.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*